THE STATE OF OHIO, APPELLANT, *v.* COOK, APPELLEE.

(No. WD-82-62—Decided
February 18, 1983.)

*Ms. Betty Montgomery,* prosecuting attorney, for appellant.

*Mr. Adrian Cimerman,* county public defender, for appellee.

HANDWORK, J. This case is before the court on appeal from a judgment of the Wood County Court of Common Pleas, which granted appellee's motion to suppress on September 15, 1982. From said judgment appellant, state of Ohio, has timely brought this appeal under Crim. R. 12(J). Appellant has raised two assignments of error, which are as follows:

"First Assignment of Error

"The trial court erred, as a matter of law, in granting appellee's motion to suppress; since, the appellee's right to be free from compulsory self-incrimination, as is commanded by the Fifth Amendment to the United States Constitution [and] in Section 10, Article I of the Ohio Constitution was not violated.

"Second Assignment of Error

"The trial court erred, as a matter of law, in suppressing those portions of appellee's grand jury testimony which are relevant to the charge of falsification; since, the failure to advise a grand jury witness of the privilege against self-incrimination cannot form a basis for having false statements made to the grand jury suppressed in a subsequent prosecution based upon those statements."

The undisputed facts giving rise to this appeal are as follows. A two-year-old child, Jeremy Davison, was admitted to the Wood County Hospital on January 22, 1982. Jeremy had been severely burned and bruised, with blisters and burn marks covering most of his body. The only person with Jeremy at the time he sustained these injuries was appellee Rochelle Cook. The investigation into the cause of Jeremy's injuries was turned over to the Wood County Grand Jury. Appellee was twice subpoenaed to appear before the grand jury. Her first appearance was on March 3, 1982. Before testifying, appellee was not in any way warned of her constitutional privilege to decline to answer incriminating questions. Appellee was apparently interrogated with regard to the facts precipitating Jeremy's injuries. On April 7, 1982, appellee was again subpoenaed before the grand jury. The record indicates that she received *Miranda* warnings before being questioned. Appellee thereafter testified without invoking her Fifth Amendment privilege against compulsory self-incrimination and without indicating that she wanted to see an attorney.

On May 6, 1982, the grand jury returned a two-count indictment charging her with child endangering and falsification, violations of R.C. 2919.22 and 2921.13, respectively. On June 17, 1982,

appellee filed a motion to suppress all her grand jury testimony. Hearings were held on appellee's motion, and the trial court granted the same on September 15, 1982.

Appellant has framed the issue of appellee's privilege against compelled self-incrimination as it arises under the Fifth Amendment to the federal Constitution, and Section 10, Article I of the Ohio Constitution. In support of their respective positions, both parties to this appeal have cited and urged as controlling certain aspects of *United States* v. *Mandujano* (1976), 425 U.S. 564. *Mandujano* was a plurality decision resting primarily on two separate opinions, each concurring in the judgment. One opinion concluded only that the now familiar *Miranda* warnings need not be given to a grand jury witness subpoenaed to testify as to criminal activity in which he may have been involved. *United States* v. *Mandujano, supra,* at 571-584 (opinion of Burger, C.J.). The second opinion concluded that on the particular facts of *Mandujano,* the defendant could be prosecuted for perjury consistent with the Fifth Amendment, but that absent "an intentional and intelligent waiver" of his "known" privilege against compulsory self-incrimination, the prosecution could not use a putative defendant's grand jury testimony against him at trial. *United States* v. *Mandujano, supra,* at 584-609 (opinion of Brennan, J., concurring in the judgment).

Certain facts in *Mandujano* are significant. A federal grand jury was investigating illicit drug trafficking. The prosecutor had information that the defendant was involved in certain narcotics transactions. He was subpoenaed to testify regarding the illicit trafficking and, prior to questioning, the prosecutor advised the defendant that he was required to answer all questions asked, except those which he felt might incriminate him. The defendant thereafter testified and some of his answers were undisputedly false. Based upon this grand jury testimony, the defendant was indicted for

attempting to distribute narcotics and for perjury. *Mandujano* is thus distinguishable from the instant case in two respects. First, the defendant in *Mandujano* was in fact given a so-called "privilege warning" prior to any questioning. He was also advised that he could have an attorney present outside the grand jury room and could consult with him if he wished. Secondly, the defendant appeared before the grand jury *only once* and it was this testimony which provided the basis for his perjury indictment. Perhaps more importantly, the plurality opinion in *Mandujano* must be evaluated in the context of two subsequent decisions: *United States* v. *Washington* (1977), 431 U.S. 181, and *United States* v. *Wong* (1977), 431 U.S. 174.

The facts of *Washington* and *Wong* are not significantly different from those in *Mandujano.* In *Wong,* a federal grand jury was investigating illegal gambling operations, and the defendant was subpoenaed to testify in regard thereto. Prior to questioning, the defendant was given *Miranda*-type warnings. Two facts in *Wong* were undisputed. First, the defendant did not fully understand the meaning of her Fifth Amendment privilege or her right to invoke it. Second, some of the testimony which she gave after receiving the warnings was false. The defendant was later indicted for perjury. The Supreme Court unanimously held that the defendant was not entitled to the suppression of her grand jury testimony because "the Fifth Amendment privilege does not condone perjury." *United States* v. *Wong, supra,* at 178. The court rejected the contention that because Wong was unaware of the nature of her constitutional privilege to refuse to answer incriminating questions, she faced the dilemma of either incriminating herself, by answering truthfully, or committing perjury. The court held that even if such a dilemma existed, perjury was never justified. *United States* v. *Wong, supra,* at 178-179. Adhering to certain language from portions of

the *Mandujano* plurality opinion, and earlier cases, the Supreme Court, at page 180, stated:

" 'Our legal system provides methods for challenging the government's right to ask questions — lying is not one of them.' "

See, also, *Bryson* v. *United States* (1969), 396 U.S. 64, 72.

In the *Washington* case, the grand jury was investigating a theft incident. The prosecutor and the grand jury suspected that the defendant and certain accomplices were involved. Prior to questioning, the defendant was given *Miranda* warnings. The defendant thereafter testified and the grand jury subsequently indicted him for grand larceny and receiving stolen property. The federal district court suppressed his grand jury testimony on the basis that he had not received a warning that he was the "target" of the investigation, in effect, a putative or potential defendant. In reversing the district court, the Supreme Court narrowly held that the Fifth Amendment did not require that putative or potential defendants be warned of their status as "targets" prior to questioning. *United States* v. *Washington, supra,* at 188-189. The Supreme Court explicitly declined to reach the issue of whether a privilege warning is constitutionally required for witnesses who are putative or potential defendants. *United States* v. *Washington, supra,* at 186 and 190. Since *Miranda* warnings had in fact been given to the defendant in *Washington,* the court's holding reached only the issue of whether the Fifth Amendment required a "target" warning. That grand jury testimony would be "compelled" in the absence of a constitutionally required warning seems clear. As the court in *Washington* noted, at page 188:

"* * * [The warnings given to the defendant] *eliminated any possible compul-*sion to self-incrimination which might otherwise exist. * * * Indeed, it seems self-evident that one who is told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled. Moreover, *any possible coercion* or unfairness resulting from a witness' misimpression that he must answer truthfully even questions with incriminatory aspects *is completely removed by the warnings given here."* (Emphasis added.)

From the foregoing analysis of the *Wong* and *Washington* cases, significant factual distinctions appear. In each case, the defendants were subpoenaed only once before the grand juries involved. In each case, too, other witnesses were available who might have testified to the matters being investigated. Each defendant received some warning as to his or her Fifth Amendment rights; indeed, the defendants in *Wong* and *Washington* received comprehensive, *Miranda*-type warnings.

In the case *sub judice*, appellee testified *twice* before the Wood County Grand Jury. The prosecutor has conceded, both in this court and in the trial court, that appellee was the only person who could have witnessed what happened to Jeremy. Indeed, at all times pertinent to the grand jury's investigation, she was the *only person* who conceivably could have been a defendant. Prior to appellee's first appearance before the grand jury on March 3, the prosecution had the benefit of the initial police investigation into the cause of Jeremy's injuries. It is undisputed that appellee received no warning whatsoever prior to her interrogation on March 3. Yet, in the prosecutor's words,[1] "after hearing her testimony, the state concluded that there was reason to believe she was involved in illegal activity." Approximately one month later, appellee was again subpoenaed

---

[1] This statement is taken from the prosecutor's responsive memorandum to defendant- appellee's motion to suppress, filed July 6, 1982.

before the grand jury. This time, prior to questioning, she received *Miranda* warnings.

Based upon these facts, we conclude that on March 3 appellee was a putative or potential defendant. Though variously formulated, the test is an objective one for determining whether a particular witness merits "putative defendant" status. A witness is a putative defendant if, at the time he appears before the grand jury, the witness is potentially the focus of the investigation and is thus subject to possible indictment. As a putative defendant, appellee should have been warned of her right to be free from compelled self-incrimination.

In order to secure the Fifth Amendment privilege of a putative defendant-witness in the context of a grand jury proceeding, we hold that the following warning is required.[2] After being sworn, but prior to any questioning, the witness must be told that he has a constitutional privilege to refuse to answer any question that might incriminate him. The witness must be warned that any incriminating answers or statements he does make can be used against him in a subsequent prosecution. Finally, the witness must be advised that he may have an attorney outside the grand jury room and may consult with him if he wishes. See *United States* v. *George* (C.A. 6, 1971), 444 F. 2d 310, 315; cf. *United States* v. *Mandujano, supra,* at 581 (opinion of Burger, C.J.). The prosecutor need *not* advise the witness that he is suspected of criminal activity or that he is a "target" of the investigation. See *United States* v. *Washington, supra.*

---

[2] A warning which informs a grand jury witness of his Fifth Amendment privilege against self-incrimination is to be distinguished from comprehensive *Miranda* warnings. Appellee's position is that *Miranda* warnings are constitutionally required for grand jury witnesses who are potential defendants. We disagree. Those warnings are inappropriate in the context of a grand jury proceeding. The first principle of *Miranda* is that an accused has an absolute right to remain silent. *Miranda* v. *Arizona* (1966), 384 U.S. 436; see, also, *United States* v. *Dohm* (C.A. 5, 1980), 618 F. 2d 1169, 1173. No such right exists for a witness subpoenaed to testify regarding matters which the grand jury is investigating. On the contrary, the witness is under a near-absolute duty to answer all questions put to him. The only exception to this duty is the witness' constitutional privilege to decline to answer any question if a truthful answer would incriminate him. This accounts for the Supreme Court's characterization of *Miranda* warnings as an "obvious overstatement" of a grand jury witness' constitutional rights. See *United States* v. *Washington* (1977), 431 U.S. 181, 183-184, fn. 2.

*Miranda* warnings are informative, prophylactic safeguards designed to secure the Fifth Amendment privilege against self-incrimination *in the context of police custodial interrogation.* The warnings were prompted by the Supreme Court's concern over the inherently coercive nature of custodial interrogation and its desire to curb police abuses. *Miranda* v. *Arizona, supra.* As the *Mandujano* court noted: "* * * *Miranda* addressed extrajudicial confessions * * * procured in a hostile, unfamiliar environment which lacked procedural safeguards." *United States* v. *Mandujano, supra,* at 579; cf. *Brown* v. *Illinois* (1975), 422 U.S. 590, 600-601.

However, this is not to say that the privilege against self-incrimination evaporates once the witness enters the cloister of a grand jury room. The availability and vitality of the privilege in the grand jury setting is well-established. See, *e.g., Counselman* v. *Hitchcock* (1892), 142 U.S. 547. As for the propriety of a privilege warning, we find the position of the United States Court of Appeals in *United States* v. *Chevoor* (C.A. 1, 1975), 526 F. 2d 178, 182, certiorari denied (1976), 425 U.S. 935, to be persuasively reasoned:

"* * * While there is not the isolated and unobservable stationhouse custody which underlies the holding in *Miranda,* * * * the conjunction of an assembled grand jury, a vigorous prosecutor, and ex parte proceedings conducted in the absence of a lawyer counselling the witness gives rise to a kind of coerciveness suggesting the wisdom of giving at least notice that a witness need not testify if such would incriminate him."

If the witness thereafter claims his privilege in any language which may be reasonably understood as invoking or asserting it, the prosecutor and the grand jury must honor the witness' decision to exercise it until immunity is granted or a valid waiver is secured.[3] Grand jury testimony obtained without first warning the witness of his constitutional privilege will be deemed compelled and may not be used against him in a subsequent prosecution.

Since appellee received no warning whatsoever before testifying on March 3, her grand jury testimony from that proceeding was inadmissible in a subsequent prosecution. Notwithstanding this, the state argues that appellee's testimony on March 3 and April 7 was relevant and admissible in prosecuting the falsification count of the indictment. We find no merit in this argument.

Unlike the single grand jury appearances of the defendants in *Mandujano, Washington* and *Wong,* appellee testified twice before the Wood County Grand Jury. The state seeks to introduce portions of appellee's testimony from each of these appearances in order to establish contradictory, and thus presumably false, statements. See R.C. 2921.13(C). But, as we have said, since appellee received no warning of her Fifth Amendment privilege on March 3, the date of her first appearance, any incriminating testimony given in that proceeding was compelled. The fact that the prosecutor "Mirandized" appellee at the April 7 appearance was insufficient to purge the taint of compulsion from her previous testimony.

We quite agree that there is no constitutional right to commit perjury. However, under the circumstances here, the responses elicited by the prosecutor's interrogation on April 7 could serve no purpose other than to permit the state to "bootstrap" its case for falsification. Clearly, as a foundation for establishing contradictory statements, the state would seek to introduce appellee's March 3 testimony. Consequently, appellee's grand jury testimony, even as to the falsification charge, was subject to suppression.

Accordingly, the state's assignments of error are not well-taken.

On consideration whereof, this court finds that the trial court did not err in suppressing the grand jury testimony of appellee Rochelle Cook, and the judgment of the Wood County Court of Common Pleas is hereby affirmed. This cause is remanded to said court for further proceedings according to law. Costs assessed against appellant.

*Judgment affirmed.*

DOUGLAS and RESNICK, JJ., concur.

---

[3] The privilege may be knowingly and voluntarily waived. The prosecutor has the burden of demonstrating such a waiver by a preponderance of record evidence.