### State v. Childress
*[Cite as 2 AOA 57]*

Case No. 2609
Clark County, (2nd)
March 20, 1990

5th & 6th Amend. U.S. Const.
R.C. 2921.11

*Darnell A. Carter, Assistant Clark County*

*Prosecutor, 50 East Columbia Street, Springfield, Ohio 45502, Attorney for Plaintiff- Appellee.*

*William Merrell, Public Defender's Office, 50 East Columbia Street, Springfield, Ohio 45502, Attorney for Defendant-Appellant.*

KERNS, J. (By Assignment)

The defendant, Deborah Childress, entered a plea of no contest to a charge of perjury in the Court of Common Pleas of Clark County. However, she was found guilty of the offense by the trial court, and from the judgment and sentence thereupon entered, Childress has appealed to this court.

During the morning of November 28, 1988, the defendant testified before the Clark County Grand Jury that she was with a murder suspect, Jeffrey Blair, at the home of her brother, Steve Rowland, at or about the time of the alleged homicide. Specifically, she stated that she and Blair had gone to her brother's house in Springfield where they drank a couple of beers.

Thereafter, the prosecutor had a lengthy discussion with Childress wherein he called her attention to the fact that her testimony differed from a notarized statement that she had given earlier. During the discussion, the prosecutor questioned the defendant as to whether her previous statement was a lie, and he advised her that if such was the case, she had committed perjury. Moreover, he informed Childress that her testimony contradicted the statements of a number of witnesses, including her own brother, who would testify before the grand jury before she was called back for further interrogation.

Then, during the afternoon session on November 28, 1988, Childress testified as follows:

"Q. Now, Miss Childress, you understand that you are still under oath from this morning.
"A. Yes.
"Q. Now, Miss Childress, this morning I explained to you what perjury is.
"A. Yes.
"Q. Now, I want to ask you some very specific things. Number one - did you and Jeff Blair go to your brother's house on the morning of November 13, 1988?
"A. No.

Thereafter, Blair was indicted by the grand jury, and was later convicted of murder, but childress did not appear for either side during the trial of the case.

In this proceeding, the appellant has set forth two assignments of error, the first of which has been stated as follows:

"The trial court's decision in finding appellant guilty on her no contest plea to perjury was contrary to law and an abuse of discretion."

In support of the alleged error, Childress argues that her false statement as to the whereabouts of Blair was not a "material" falsification within the intendment of R.C. 2921.11 because Blair was subsequently indicted for the crime.

In this regard, R.C. 2921.11 provides as follows:

"(A) No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material.

"(B) A falsification is material, regardless of its admissibility in evidence, if it can affect the course or outcome of the proceeding. * * *"

The State alludes to the appellant's argument as absurd", and this appears from the record to be an apt description. Manifestly, the false testimony of Childress could have had a critical bearing on the outcome of the proceedings. Indeed, her false statement went directly to the guilt or innocence of Blair. It was completely misleading, and it was material in the context of R.C. 2921.11. Hence, the first assignment of error is without merit and will be overruled.

The second assignment of error, which poses a more difficult problem, has been presented by the appellant as follows:

"The trial court committed prejudicial error in failing to suppress appellant's second statement to the grand jury."

This alleged error stems from a motion to suppress which was filed by the appellant on March 8, 1989 and which was overruled by the trial court on May 9, 1989 in an entry which provides, in substance, as follows:

"As to statements made by the defendant before the grand jury and the evidence presented thereon, the court finds the defendant was not entitled to a 'Miranda Rights' warning prior to her testimony before the grand jury.

"The court further finds defendant was not entitled to warnings concerning self-incrimination prior to her testimony before the grand jury.

"As to defendant's right to counsel, defendant has no right to counsel while testifying before a grand jury."

Since the warnings mandated by *Miranda v. Arizona*, 384 U.S. 436 are intimately associated custodial interrogation, we are inclined to agree with the trial court that such warnings have only a limited application context of grand jury proceedings. In fact, the basic premise of *Miranda* is that an accused has an absolute right to remain silent, but no such right exists for a witness subpoenaed to testify regarding matters which a grand jury is investigating.

However, in a narrower vein, it is well established that the Fifth Amendment privilege against self-incrimination extends to grand jury proceedings (*United States* v. *Washington*, 431 U.S. 181; *Councilman* v.*Hitchcock*, 142 U.S. 547), and in any number of situations, the realistic protection of the privilege against self-incrimination necessarily would require that a witness be notified of her Sixth Amendment right to legal advice.

In the present case, the appellee relies upon such cases as *United States* v. *Knox*, 396 U.S. 77 and *United States* v. *Wong*, 431 U.S 174, but neither of those authorities can be suited comfortably to the facts disclosed by the record in this case. Here, the appellant was required to appear before the grand jury a second time after she had already made statements under oath which provided the basis for a perjury charge and at no time during the entire proceedings was Childress advised of any constitutional rights. Moreover, the record in this case, including the prosecutor's disregard for the truth, amply depicts the compulsive atmosphere which existed between her first and second appearances before the grand jury. As noted in *United States* v. *Chevoor*, 526 F.2d 178, "the conjunction of an assembled grand jury, a vigorous prosecutor, and ex parte proceedings conducted in the absence of a lawyer counselling the witness gives rise to a kind of coerciveness suggesting the wisdom of giving at least notice that a witness need not testify if such would incriminate him".

Under the circumstances of this particular case, the testimony given by Childress at the afternoon session of the grand jury was hardly the product of a free will, and while her testimony at the morning session made her a prime target for a perjury charge, the additional incriminating testimony given by her at the afternoon session had the effect of sealing her fate. Moreover, in the absence of counsel, Childress was forced to sacrifice her bargaining power on the initial perjury charge. And as a further incident of the failure to give the required warnings, the State was able to bootstrap a pending charge into a probable conviction.

Accordingly, Childress should have been advised before her second appearance before the grand jury that she had a constitutional privilege to refuse to answer any questions that might

further incriminate her, and that she might have counsel outside the jury room to consult for advice.

In the case of *State* v. *Cook*, 11 Ohio App. 3d 237, which has many characteristics similar to those of the present case, the court observed that constitutional warnings are sometimes necessary to preserve the rights of a witness during grand jury proceedings, and likewise in the instant case, Childress was entitled, under the circumstances, to be apprised of her Fifth and Sixth Amendment rights. Hence, the second assignment of error must be sustained.

The judgment will be reversed and the cause remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed and cause remanded.*

WOLFF, P.J., and FAIN, J., Concurs.

(Judge Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)