OPINION
{¶ 1} Defendant-appellant, Liz M. Carroll, appeals her convictions in the Clermont County Court of Common Pleas for murder, involuntary manslaughter, kidnapping, felonious assault, and three counts of endangering children.
 {¶ 2} On April 22, 2006, Marcus Fiesel, who was almost three years old, was removed from his home and placed in foster care by Lifeway for Youth, Inc. ("Lifeway"). On May 5, 2006, Marcus was placed in the custody of appellant and her husband, David Carroll, who were licensed foster caregivers living in Clermont County. *Page 2 
 {¶ 3} On Friday, August 4, 2006, appellant, David Carroll, their four children, and Amy Baker traveled to Kentucky for a family reunion. Before leaving Ohio that evening, appellant and David Carroll wrapped Marcus in a blanket from his neck to his ankles, and then wrapped tape around the blanket to restrain him. Marcus was then placed in a playpen inside a closet in his bedroom. When the group returned from Kentucky around 6:00 a.m. on Sunday, August 6, Marcus was dead.
 {¶ 4} David Carroll took Marcus's body out of the playpen and wrapped it in another blanket and put the body inside a box along with clothing. David Carroll and Amy Baker then traveled to Brown County, where they used gasoline to burn Marcus' body in a chimney. David Carroll and Amy Baker later returned to Brown County to collect Marcus' remains, which they then discarded in the Ohio River.
 {¶ 5} On August 10, 2006, a Lifeway caseworker arrived at appellant's home for a scheduled visit with Marcus. Appellant told the caseworker that Marcus was sick and sleeping in his second-floor bedroom. The caseworker visited with appellant for a short time and then left.
 {¶ 6} On August 15, 2006, appellant took three children to a park in Hamilton County. At around 1:00 in the afternoon, appellant fell to the ground and pretended to be unconscious. When appellant feigned regaining consciousness, she stated she had three children with her. However, when David Carroll arrived at the park, he reported to authorities that appellant had taken four children to the park, including Marcus, and that Marcus was now missing. When questioned by a law enforcement official, appellant stated that she had four children with her at the park, and asked if something was wrong with Marcus. Over the next several days, law enforcement officials and community members participated in a massive search for Marcus.
 {¶ 7} During the investigation into Marcus' disappearance, law enforcement officials *Page 3 
subpoenaed appellant and Amy Baker to testify before the Hamilton County Grand Jury. On August 28, 2006, Amy Baker testified before the grand jury as to the cause of Marcus's death and stated that his apparent disappearance on August 15, 2006 was a fabrication. When appellant was called to testify before the grand jury the same day, she initially stated that Marcus was with her on August 15 and disappeared when she passed out. However, when prosecutors questioned appellant about the events surrounding the trip to Kentucky, appellant testified that when she and David Carroll left Marcus alone in his bedroom closet he was alive, and that Marcus was dead when they returned from Kentucky.
 {¶ 8} Subsequently, appellant was indicted by the Clermont County Grand Jury on the following counts: felony murder in violation of R.C.2903.02(B) ("Count 1"); involuntary manslaughter in violation of R.C.2903.04(A) ("Count 2"); kidnapping in violation of R.C. 2905.01(B)(2) ("Count 3"); felonious assault in violation of R.C. 2903.11(A)(1) ("Count 4"); endangering children in violation of R.C. 2919.22(B)(1) ("Count 5"); endangering children in violation of R.C. 2919.22(B)(3) ("Count 6"); and endangering children in violation of R.C. 2919.22(A) ("Count 7").
 {¶ 9} After a jury trial, appellant was convicted on all counts. Appellant appeals her convictions, raising six assignments of error. For ease of discussion, we address appellant's sixth assignment of error before her fifth assignment of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS HER GRAND JURY TESTIMONY."
 {¶ 12} In her first assignment of error, appellant argues that the trial court erred in denying a motion to suppress her grand jury testimony because she alleges her statements were involuntary. Appellant maintains that she was forced to testify before the grand jury, was not informed that she was a target of an investigation, was not offered an attorney, and *Page 4 
was vulnerable to pressure because of medication she was taking for psychological problems.
 {¶ 13} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Howard, Preble App. No. CA2006-02-003, 2006-Ohio-5656, ¶ 12, citingState v. Long (1998), 127 Ohio App.3d 328, 332. Because a trial court assumes the role of the trier of fact when considering a motion to suppress, and is therefore in the best position to resolve factual questions and evaluate witness credibility, an appellate court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. Id. However, an appellate court independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, "whether, as a matter of law, the facts meet the appropriate legal standard." Id., quoting State v. Curry (1994), 95 Ohio App.3d 93, 96.
 {¶ 14} A witness is a putative defendant if, at the time she appears before the grand jury, the witness is potentially the focus of an investigation and subject to a potential indictment. State v.Huggins, Cuyahoga App. No. 88068, 2007-Ohio-1289, citing State v.Cook (1983), 11 Ohio App.3d 237. A putative witness testifying at a grand jury proceeding must be advised that she has a constitutional right to refuse to answer any question that might incriminate her, after being sworn, but prior to any questioning. Id. Further, the witness must be advised that any incriminating answers or statements made at the hearing can be used against her in a subsequent prosecution. Id. Finally, the witness must be advised that she may have an attorney outside the grand jury room, and that she may consult with her attorney if she wishes. Id.
 {¶ 15} Contrary to her claims, the record indicates that appellant was informed that she could refuse to answer questions that might incriminate her, and that she was entitled to an attorney. In fact, appellant was advised of additional Miranda warnings at the grand jury *Page 5 
hearing, even though this was not required. Immediately after appellant was sworn, the following transpired:
 {¶ 16} "[PROSECUTOR]: Tell us your name, please.
 {¶ 17} "[APPELLANT]: Liz Carroll.
 {¶ 18} "Q: Okay. Liz, before we ask you any questions, I know you've been questioned a lot by the police so far; is that correct?
 {¶ 19} "A: (Nodding head affirmatively.)
 {¶ 20} "Q: Have they ever read you your Miranda rights when they question you?
 {¶ 21} "A: Um, yeah.
 {¶ 22} "Q: Are you familiar with what those are?
 {¶ 23} "A: Uh-huh.
 {¶ 24} "Q: You know you have a right to remain silent?
 {¶ 25} "A: Uh-huh.
 {¶ 26} "Q: You know anything you say in here can be used against you?
 {¶ 27} "A: Uh-huh.
 {¶ 28} "Q: You know you have the right to an attorney?
 {¶ 29} "A: Uh-huh.
 {¶ 30} "Q: And if you cannot afford an attorney, you can have one appointed for you?
 {¶ 31} "A: Uh-huh.
 {¶ 32} "Q: I'm going to ask you some questions and if at any point you want to stop answering those questions and get an attorney, you know you can do that?
 {¶ 33} "A: (Nodding head affirmatively.)
 {¶ 34} "Q: You also understand that you are under oath now, which is a little bit different than the other statements you gave, and if you lie under oath that in and of itself is a *Page 6 
crime; you understand that?
 {¶ 35} "A: (Nodding head affirmatively.)
 {¶ 36} "Q: Crime of perjury?
 {¶ 37} "A: (Nodding head affirmatively.)
 {¶ 38} "Q: And you know * * * there is a chance you could be charged[.] [T]his is a grand jury[.] [T]here is a chance you could be charged with a criminal offense by these people, okay?
 {¶ 39} "A: (No response.)
 {¶ 40} "Q: So you understand all that?
 {¶ 41} "A: Yeah."
 {¶ 42} Further, the following occurred later in the hearing:
 {¶ 43} "Q: Now, understanding what * * * we said before, that if in here you say something that is not true, that's perjury?
 {¶ 44} "A: Uh-huh.
 {¶ 45} "Q: You also understand that you have a right to not incriminate yourself?
 {¶ 46} "A: (Nodding head affirmatively.)
 {¶ 47} "Q: If you want to stop any time we ask you a question, you can. You have no problem so far answering questions?
 {¶ 48} "A: Right."
 {¶ 49} It is clear from the transcript of the grand jury proceedings that appellant was aware that she did not have to answer questions that might incriminate her, and that she also had the right to speak to an attorney. Appellant also was informed that she could be criminally charged as a result of her testimony.
 {¶ 50} Appellant's additional arguments are likewise unsupported by the record. The *Page 7 
record indicates that appellant was not interrogated in custodial surroundings, as appellant claims. Rather, the record indicates that appellant was transported to the Hamilton County Prosecutor's Office by a detective who had previously provided transportation for appellant. At the motion to suppress hearing, the detective testified that he did not place appellant under arrest, nor did he interrogate appellant in any way, but merely had a conversation with appellant about what she might expect at the grand jury hearing. Further, the detective indicated that appellant's mental state seemed normal, and that she did not appear to be intoxicated or under the influence of drugs.
 {¶ 51} In addition, the court reporter who transcribed the hearing testified that appellant appeared calm, composed, and cooperative throughout the questioning. The court reporter also testified that the prosecutors who questioned appellant did not badger her.
 {¶ 52} After reviewing the record, we find that appellant's testimony at the grand jury hearing was voluntary, and that the waiver of her rights with respect to self-incrimination and to an attorney was also voluntary. Accordingly, we find that the trial court did not err in overruling appellant's motion to suppress her grand jury testimony.
 {¶ 53} Appellant's first assignment of error is overruled.
 {¶ 54} Assignment of Error No. 2:
 {¶ 55} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A CHANGE OF VENUE, AND FOR A NEW TRIAL BASED ON JUROR PREDISPOSITION."
 {¶ 56} In her second assignment of error, appellant argues she did not receive a fair jury trial, because the jury pool was so tainted by pretrial publicity that seating a fair and impartial jury was impossible. Appellant claims she is entitled to a new trial because members of the jury admitted to forming a predisposed opinion regarding appellant's guilt. Further, appellant maintains the pretrial publicity in this case was so pervasive in the venue of Clermont County that a presumption of prejudice in the jury panel should have been found. *Page 8 
 {¶ 57} Upon motion by either party, or by the trial court itself, a change of venue is appropriate where, "it appears that a fair and impartial trial cannot be held in the court in which the action is pending." Crim.R. 18(B); see, also, R.C. 2901.12(K). It is within the trial court's discretion to determine whether to grant a motion for change of venue, and "appellate courts should not disturb the trial court's [venue] ruling * * * unless it is clearly shown that the trial court has abused its discretion." State v. Lundgren, 73 Ohio St.3d 474,479, 1995-Ohio-227, citing State v. Maurer (1984), 15 Ohio St.3d 239,250. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.
 {¶ 58} In "relatively rare" cases, adverse pretrial publicity can be so pervasive that a presumption of prejudice exists. Lundgren at 479, citing Nebraska Press Assn. v. Stuart (1976), 427 U.S. 539, 554,96 S.Ct. 2791, 2800. "A change of venue is not automatically granted when there is extensive pretrial publicity." State v. Frazier,115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 235. Pretrial publicity — even pervasive, adverse publicity — does not inevitably lead to an unfair trial. Nebraska PressAssn. at 553.
 {¶ 59} "[A] careful and searching voir dire provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality." Frazier at ¶ 235, citingState v. Bayless (1976), 48 Ohio St.2d 73, 98. Further, a defendant claiming that pretrial publicity has denied her a fair trial must show that one or more jurors were actually biased. State v. Gross,97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 29. See, also, State v. Mundt,115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 67.
 {¶ 60} Nothing in the record supports appellant's allegations that she was denied a fair and impartial trial because of pretrial publicity. The trial court held a preliminary voir dire to exclusively focus on the issue of pretrial publicity before holding the general voir dire. The record indicates that ten jurors were challenged for cause, and the trial court granted eight of *Page 9 
those challenges, and denied challenges for cause with respect to jurors #1 and #55. However, appellant later excluded these two jurors with peremptory challenges during the general voir dire.
 {¶ 61} Appellant argues that several statements made during voir dire indicate juror bias. However, despite appellant's claim, with the exception of jurors #1 and #55, appellant did not raise challenges for cause with respect to these jurors. Nonetheless, a review of the record reveals that each of these jurors, including jurors #1 and #55, indicated a willingness to disregard what they had heard about this case in the media, and the intent to rely instead on evidence and law presented in court during the trial. Accordingly, the trial court did not abuse its discretion in failing to dismiss these jurors for cause. See State v. McGlothin, Hamilton App. No. C-060145, 2007-Ohio-4707, ¶ 11-12.
 {¶ 62} Moreover, appellant has failed to demonstrate that one or more jurors were actually biased. Appellant has not cited anything in the record, nor have we found anything in our review, to indicate any actual bias on the part of any juror. While appellant points to jurors' comments in a newspaper article published after the trial, appellate review is strictly limited to the record, and this court cannot consider matters outside the record that were not part of the trial court proceedings. See State v. Moore, Cuyahoga App. No. 88160,2007-Ohio-2919, ¶ 5; State v. Ishmail (1978), 54 Ohio St.2d 402.
 {¶ 63} Next, appellant argues that the trial court erred in denying her motion for a new trial based on juror misconduct without holding a hearing on the matter. We disagree.
 {¶ 64} The decision whether to grant a new trial based on Crim.R. 33 is within the sound discretion of the trial court. State v. Wood, Preble App. No. CA2005-11-018, 2006-Ohio-3781, ¶ 34; State v. Blankenship
(1995), 102 Ohio App.3d 534, 556. "An appellate court may not disturb a trial court's decision denying a motion for a new trial absent an abuse of discretion." Blankenship, 102 Ohio App.3d at 556, citing State v.Shepard (1983), *Page 10 13 Ohio App.3d 117, 119.
 {¶ 65} Crim.R. 33 provides in relevant part:
 {¶ 66} "* * * A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 67} "* * *
 {¶ 68} "(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
 {¶ 69} "* * *
 {¶ 70} "* * * The causes enumerated in subsection (A)(2) * * * must be sustained by affidavit showing their truth, and may be controverted by affidavit."
 {¶ 71} We find no basis for appellant's motion for a new trial based on alleged juror misconduct. Appellant failed to file an affidavit in support of her motion for a new trial as required by Crim.R. 33(C). Moreover, the use of juror testimony to impeach a jury verdict is generally prohibited. Evid.R. 606(B); State v. Robb, 88 Ohio St.3d 59,2000-Ohio-275.
 {¶ 72} Evid.R. 606(B), the aliunde rule, provides:
 {¶ 73} "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying will not *Page 11 
be received for these purposes."
 {¶ 74} As the Ohio Supreme Court held in State v. Hessler,90 Ohio St.3d 108, 123, 2000-Ohio-30, "[t]he purpose of the aliunde rule is to maintain the sanctity of the jury room and the deliberations therein.* * * The rule is designed to ensure the finality of jury verdicts and to protect jurors from being harassed by defeated parties. The rule requires a foundation from nonjuror sources. Thus, we have held that `the information [alleging misconduct] must be from a source which possesses firsthand knowledge of the improper conduct.'" (Internal citations omitted.)
 {¶ 75} Appellant did not provide either an affidavit to support her motion for a new trial, or a source possessing firsthand knowledge of improper conduct. Accordingly, we find the trial court did not abuse its discretion in overruling appellant's motion for a new trial.
 {¶ 76} Appellant's second assignment of error is overruled.
 {¶ 77} Assignment of Error No. 3:
 {¶ 78} "THE TRIAL COURT ERRED IN ENTERING SEPARATE CONVICTIONS AND SENTENCES FOR MURDER AND INVOLUNTARY MANSLAUGHTER."
 {¶ 79} In her third assignment of error, appellant argues that because involuntary manslaughter is a lesser included offense of felony murder, she cannot be convicted of both murder and involuntary manslaughter. On this issue, the state agrees.
 {¶ 80} The Double Jeopardy Clauses of the United States and Ohio Constitutions preclude the imposition of multiple punishments in a single proceeding for the same substantive offense. See Blockburger v.United States (1931), 284 U.S. 299, 52 S.Ct. 180; United States v.Benz (1930), 282 U.S. 304, 51 S.Ct. 113; Brown v. Ohio (1977),432 U.S. 161, 166, 97 S.Ct. 2221.
 {¶ 81} "An offense may be a lesser-included offense of another if: (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, *Page 12 
ever be committed without the lesser offense, as statutorily defined, also being committed; and, (3) some element of the greater offense is not required to prove the commission of the lesser offense." State v.Accord, Fayette App. No. CA2005-05-019, 2006-Ohio-2250, ¶ 5, citingState v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
 {¶ 82} This court has previously held that involuntary manslaughter under R.C. 2903.04(A) is a lesser included offense of murder. SeeState v. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 49, citing State v. Lynch, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 79.
 {¶ 83} In Count 1, appellant was charged with felony murder in violation of R.C. 2903.02(B), which provides in relevant part, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *."
 {¶ 84} In Count 2, appellant was charged with involuntary manslaughter in violation of R.C. 2903.04(A), which provides in relevant part, "[n]o person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 85} According to the jury verdict and judgment entry on verdict and sentencing, appellant was found guilty of committing both Count 1 and Count 2. At the sentencing hearing, the trial court stated, "[On] Count 1, you are to serve not less than 15 years or more than life in prison for the crime of murder. [On] Count 2, while I am imposing 10 years, I feel that [this count] * * * is an allied offense, so I'm going to determine that it merges, [and the sentence] is to be served concurrently * * *."
 {¶ 86} While the trial court found that Count 2 should merge with Count 1 at the sentencing hearing, the judgment entry on verdict and sentencing does not reflect that Count 2 merged with Count 1. We find this to be error, and consequently, Count 2 shall be merged *Page 13 
with Count 1, and appellant's sentence on Count 2 is vacated. Since the trial court ordered appellant's sentence on Count 2 to be served concurrently with her sentence for Count 1, this modification does not reduce the length of appellant's sentence.
 {¶ 87} Appellant's third assignment of error is sustained.
 {¶ 88} Assignment of Error No. 4:
 {¶ 89} "THE TRIAL COURT ERRED IN ENTERING SEPARATE CONVICTIONS AND SENTENCES FOR MURDER, INVOLUNTARY MANSLAUGHTER, KIDNAPING [SIC], FELONIOUS ASSAULT, AND THREE COUNTS OF CHILD ENDANGERING, WHEN ALL CHARGES RESULTED FROM THE IDENTICAL CONDUCT AGAINST A SINGLE VICTIM."
 {¶ 90} In appellant's fourth assignment of error, she argues that the crimes for which she has been convicted are allied offenses of similar import, because they are derived from the same course of conduct.
 {¶ 91} R.C. 2941.25, Ohio's allied offense statute, protects against multiple punishments for the same criminal conduct, which could violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. R.C. 2941.25 provides:
 {¶ 92} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 93} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 94} When considering whether offenses are of similar import under R.C. 2941.25(A), a court must compare the statutorily defined elements of the offenses and *Page 14 
determine whether they "correspond to such a degree that the commission of one crime will result in the commission of the other." State v.Rance, 85 Ohio St.3d 632, 638, 1999-Ohio-291, quoting State v.Jones, 78 Ohio St.3d 12, 14, 1997-Ohio-38.
 {¶ 95} "[T]he statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract." (Emphasis sic.) Rance at 638. "[I]f the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." Id. at 638-639, citing R.C. 2941.25(B) and Jones at 14.
 {¶ 96} Appellant urges this court to depart from the Rance test, and argues that rather than comparing the elements of the offenses in the abstract, this court is required to analyze the particular facts of this case to determine if the acts or animus for each crime are separate. In support of this argument, appellant relies on the Ohio Supreme Court's decision in State v. Cooper, 104 Ohio St.3d 293, 2004-Ohio-6553, where the court examined the defendant's conduct in response to a claim that the crimes for which he was convicted are allied offenses of similar import.
 {¶ 97} However, appellant's reliance on Cooper is misplaced.Cooper does not abrogate the Rance test of comparing the elements of crimes in the abstract to determine if they are allied offenses. In fact, as the court stated in Cooper, "[the] acts [for which the defendant was convicted] are not the `same conduct * * * constituting] two or more allied offenses of similar import' within the meaning of R.C. 2941.25(A) and, thus, do not involve analysis under State v.Rance." Id. at ¶ 2. The court later explained, "[h]ere, [the defendant's] convictions did not originate from a single act, but rather, in accordance with the evidence, from his separate acts of slamming Jordan against a hard surface, which provided the basis of the underlying offense of child endangering in connection with the involuntary manslaughter conviction, and shaking Jordan, as a separate count of child endangering. Our *Page 15 
decision does not alter our holding in Rance, because Rance is not implicated by the facts of this case." Id. at ¶ 29.
 {¶ 98} The court continued, holding, "* * * that R.C. 2941.25(A) applies when the state obtains multiple convictions arising out of the same conduct of a defendant that can be construed to constitute two or more allied offenses of similar import. Where the state has not relied upon the same conduct of the defendant to support a conviction for the offense of involuntary manslaughter involving child endangering and a separate conviction for child endangering, the defendant may be convicted of both crimes and sentenced on each."
 {¶ 99} In this case, appellant has been convicted on multiple counts based on the same conduct. Accordingly, the Supreme Court's analysis inCooper is inapplicable. Instead, we continue to rely on theRance analysis to compare the statutory elements of each offense in the abstract. Rance at 638.
 {¶ 100} With respect to Count 1, felony murder, and Count 2, involuntary manslaughter, our resolution of appellant's third assignment of error renders appellant's argument under this assignment of error moot.
 {¶ 101} Appellant argues that Count 4, felonious assault, must be merged with felony murder, because felony assault is a predicate offense to felony murder. This court rejected the same argument in State v.Gomez-Silva, Butler App. No. CA2000-11-230, 2001-Ohio-8649. InGomez-Silva at 26, we stated:
 {¶ 102} "Upon review of the elements of the charges of felony murder and felonious assault, we find that the two charges are not allied offenses of similar import. Felony murder requires causing death while committing a first or second-degree felony of violence, whereas felonious assault requires knowingly causing serious physical harm to another. The commission of one crime does not result in the commission of the other. R.C. 2945.25."
 {¶ 103} Further, we stated: *Page 16 
 {¶ 104} "Appellant argues that felonious assault was a necessary precursor to felony murder and thereby an allied offense of similar import. We reject appellant's argument based upon State v. Keene (1998),81 Ohio St.3d 646, 668 (felony-murder under R.C. 2903.01(B) is not an allied offense of similar import to the underlying felony, and R.C2941.25 authorizes punishment for both crimes)."
 {¶ 105} Likewise, felony murder and child endangering are not allied offenses. State v. Hoover-Moore, Franklin App. No. 03AP-1186,2004-Ohio-5541. In Hoover-Moore at ¶ 50, the Tenth Appellate District held:
 {¶ 106} "A comparison of the elements of R.C. 2903.02(B) and2919.22(B)(1) in the abstract reveals that the two offenses are not allied offenses because the commission of one will not automatically result in the commission of the other. Here, one of the elements of felony murder is proof of an underlying offense of violence that is a felony of the first or second degree, other than voluntary or involuntary manslaughter. However, the underlying offense of violence need not be child endangering. Further, felony murder requires that a death occur; child endangering does not. By contrast, child endangering requires a victim under 18 years of age; felony murder does not. Consequently, under Rance, the commission of one offense can occur without the commission of the other, and therefore, these offenses are not allied offenses of similar import."
 {¶ 107} Similarly, after comparing the elements of child endangering under R.C. 2919.22(A) and R.C. 2919.22(B)(3) with the elements of felony murder under R.C. 2903.02(B), we find that neither child endangering crime is an allied offense of felony murder, as commission of one will not automatically result in the commission of the other.
 {¶ 108} Also, felonious assault and child endangering are not allied offenses. State v. Garcia, Franklin App. No. 03AP-384, 2004-Ohio-1409. As the Tenth Appellate District held in Garcia at ¶ 41: *Page 17 
 {¶ 109} "Although the two offenses both have causation and the resultant serious physical harm in common, a conviction of felonious assault requires proof that appellant acted knowingly while the child-endangering conviction only requires proof that appellant acted recklessly. `Although proof of knowledge may suffice to prove recklessness, proof of recklessness is not sufficient to prove knowledge.' * * * Given these different culpable mental states, it cannot be said that an act of child endangering in violation of R.C.2919.22(B)(1) results in the commission of a felonious assault. In addition, one can commit an act of felonious assault on someone over the age of 18 and not be guilty of child endangering. * * * Accordingly, because the statutory elements of the crimes do not correspond to such a degree that the commission of one crime will result in the commission of the other, the offenses are not allied offenses of similar import." (Internal citations omitted.)
 {¶ 110} Similarly, after comparing the elements of child endangering under R.C. 2919.22(A) and R.C. 2919.22(B)(3) with the elements of felonious assault under R.C. 2903.11(A)(1), we find that neither child endangering crime is an allied offense of felonious assault, as commission of one will not automatically result in the commission of the other.
 {¶ 111} Likewise, kidnapping under R.C. 2905.01(B) is not an allied offense of child endangering using the Ranee analysis. Kidnapping under R.C. 2905.01 (B)(2) requires proof that the defendant knowingly used force, threat, or deception, or by any means when the victim is under the age of 13, to restrain the victim such that the restraint creates a substantial risk of serious physical harm or causes serious physical harm when the victim is under 13. In comparison, child engendering under R.C. 2919.22(B)(1) requires that the defendant recklessly abused the child, and R.C. 2919.22(B)(3) requires that the defendant acted recklessly (rather than knowingly) in physically restraining a child for a prolonged period of time. Child endangering under R.C. 2919.22(A), does not require proof of restraint, *Page 18 
and also requires proof that the defendant was a guardian, custodian, parent, or someone in loco parentis, which is not an element of kidnapping. Therefore, none of the child endangering crimes are allied offense of kidnapping, as commission of one will not automatically result in the commission of the other.
 {¶ 112} Further, using the Rance analysis, the child endangering crimes under R.C. 2919.22(B)(1), R.C. 2919.22(B)(3), and R.C. 2919.22(A) are not allied offenses of each other, as each requires proof of an element that the others do not require. Accordingly, commission of one will not automatically result in the commission of the other.
 {¶ 113} Appellant's fourth assignment of error is overruled.
 {¶ 114} Assignment of Error No. 6:
 {¶ 115} "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE WHEN IT DENIED COUNSEL'S MOTIONS FOR A VERDICT OF ACQUITTAL, AND AGAIN WHEN IT ACCEPTED AND JOURNALIZED VERDICTS OF GUILTY WHICH WERE NOT SUPPORTED BY RELEVANT AND CREDIBLE EVIDENCE AND WHICH WERE RENDERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 116} In her sixth assignment of error, appellant argues that the state presented insufficient evidence to establish appellant's guilt with respect to the crimes of felonious assault and kidnapping. Further appellant argues that the jury's verdicts convicting appellant of these crimes were not supported by the manifest weight of the evidence.
 {¶ 117} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Wilson, Warren App. No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. The review of a court's denial of a motion for acquittal under *Page 19 
Crim.R. 29 is governed by the same standard as that used for determining whether a verdict is supported by sufficient evidence. Haney,2006-Ohio-3899, ¶ 14; State v. Jenks (1991), 61 Ohio St.3d 259, syllabus. In reviewing a record for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 118} While the test for sufficiency requires a determination as to whether the state has met its burden of production at trial, a manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. Wilson at ¶ 34. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. In such a review, an appellate court considers the credibility of the witnesses and the weight to be given the evidence. State v. Walker, Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. "However, these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence presented." Id., citing State v. DeHass (1967), 10 Ohio St.2d 230. The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal. Id. at ¶ 25, citingThompkins, 78 Ohio St.3d at 387.
 {¶ 119} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of *Page 20 
sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Wilson at ¶ 35, citing State v. Lombardi, Summit App. No 22435, 2005-Ohio-4942, ¶ 9.
 {¶ 120} As we have previously stated, appellant was convicted of kidnapping in violation of R.C. 2905.01, which provides in relevant part:
 {¶ 121} "(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 {¶ 122} "* * *
 {¶ 123} "(2) Restrain another of his liberty * * *"
 {¶ 124} Further, appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides in relevant part, "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *."
 {¶ 125} Appellant disputes that the state proved, beyond a reasonable doubt, that she knowingly committed kidnapping and felonious assault, and that the jury's finding that appellant knowingly committed these crimes is against the manifest weight of the evidence.
 {¶ 126} R.C. 2901.22 (B) provides, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Further, as this court stated inState v. Sutton (2001), 145 Ohio App.3d 408, 415:
 {¶ 127} "Unlike the higher degree of culpability of `purposely,' `knowingly' does not require the specific intent to commit the crime. * * * `Under the common law, crimes *Page 21 
committed with "knowledge" were classified as crimes of general intent, and culpability could be inferred from the voluntary performance of the act itself * * *, "regardless of [the defendant's] purpose" in so doing.'" (Internal citations omitted.)
 {¶ 128} According to appellant's grand jury testimony, appellant admitted that she and David Carroll left Marcus in a playpen inside a closet wrapped in a blanket, and that when they returned from Kentucky, Marcus was dead. Further, at trial, Amy Baker testified that appellant and David Carroll wrapped Marcus in a blanket, then wrapped tape around the blanket, and placed Marcus in a playpen inside a closet. Amy Baker also testified at trial that Marcus was dead when they returned from Kentucky.
 {¶ 129} In addition, a Lifeway caseworker testified that when Marcus was placed with appellant and David Carroll, she explained to appellant that Marcus was developmentally delayed, and that although the child was almost three years old, he functioned as a 18-month old child. Consequently, the caseworker instructed appellant that Marcus should be continuously monitored, and that he should never be left alone.
 {¶ 130} After reviewing the entire record, including these facts, we cannot say the jury clearly lost its way and created such a manifest miscarriage of justice by finding that appellant knowingly restrained Marcus and that doing so would probably cause Marcus to suffer serious physical harm when left alone. We find that a reasonable juror could infer from the evidence presented that appellant, who is a mother of three, a daycare provider, and a certified foster caregiver, knew that leaving a young child alone for an extended period of time would likely result in the child suffering serious physical harm. Accordingly, we find that appellant's convictions for kidnapping and felonious assault are not against the manifest weight of the evidence.
 {¶ 131} Having found that appellant's convictions for kidnapping and felonious assault are not against the manifest weight of the evidence, we also find that the evidence presented *Page 22 
was sufficient for a rational trier of fact to find the elements of kidnapping and felonious assault proven beyond a reasonable doubt. Appellant's convictions are supported by sufficient evidence, and the trial court properly denied appellant's Crim.R. 29 motion.
 {¶ 132} Appellant's sixth assignment of error is overruled.
 {¶ 133} Assignment of Error No. 5:
 {¶ 134} "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE WHEN IT DENIED COUNSEL'S REQUEST FOR JURY INSTRUCTIONS ON RECKLESS HOMICIDE AND ACCOMPLICE TESTIMONY."
 {¶ 135} Appellant argues the evidence presented at trial supported an instruction on reckless homicide as a lesser included offense of murder.
 {¶ 136} A jury instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. State v. Carter, 89 Ohio St.3d 593, 600,2000-Ohio-172. In determining whether to give an instruction on a lesser included offense, the trial court must consider the evidence in a light most favorable to the defendant. State v. Davis (1983), 6 Ohio St.3d 91,95-96.
 {¶ 137} After reviewing the record, we find that a jury instruction on reckless homicide was not supported by the evidence presented at trial, as the evidence did not support an acquittal on the felony murder charge. As we stated previously, appellant was convicted of felony murder in violation of R.C. 2903.02(B), which provides in relevant part, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." Further, we have already determined that appellant's convictions for kidnapping and felonious assault are supported by sufficient evidence, and there is no evidence in the record to dispute that the commission of these crimes was the proximate cause of Marcus' death. *Page 23 
Accordingly, we find that the evidence did not support an acquittal on the felony murder charge.
 {¶ 138} Next, appellant argues that the evidence presented at trial supported an instruction on accomplice testimony. Appellant maintains that the state's case relied heavily upon the testimony of a witness who was offered immunity from prosecution in return for her testimony. Appellant argues the trial court should have given a special jury instruction on Amy Baker's testimony, as she was an accomplice. We disagree.
 {¶ 139} R.C. 2923.03(D) provides:
 {¶ 140} "If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 {¶ 141} "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 {¶ 142} "It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
 {¶ 143} As this court stated in State v. Sillett, Butler App. No. CA2000-10-205, 2002-Ohio-2596, ¶ 17:
 {¶ 144} "[T]his court has previously held that the above instruction is not required when the witness is not charged with complicity as a result of involvement with the defendant's criminal activities."State v. Royce (Dec. 27, 1993), Madison App. Nos. CA92-09-023, CA92-09-024, CA92-09-025, CA92-09-026. Likewise, several other appellate courts *Page 24 
have determined that the requirement that this instruction be given is not applicable unless the witness has been indicted. State v.Gillard (Mar. 3, 2000), Erie App. Nos. E-97-132, E-98-038; State v.Howard, Marion App. No. 9-99-12, 1999-Ohio-848; State v. Goodwin, Mahoning App. No. 99-CA-220, 2001-Ohio-3416; State v. Hinkle (Aug. 23, 1996), Portage App. No. 95-P-0069; State v. Lordi, 140 Ohio App.3d 561,572, 2000-Ohio-2582, ¶ 41. The rationale behind these rulings is based on the Ohio Supreme Court's definition of an accomplice. In State v.Wickline (1990), 50 Ohio St.3d 114, 118 * * *, the Court held that "at the very least, an accomplice must be a person indicted for the crime of complicity."
 {¶ 145} Further, we stated in Sillett at ¶ 18:
 {¶ 146} "Previously, R.C. 2923.03(D) required that the testimony of accomplices be corroborated. State v. Evans (1992), 63 Ohio St.3d 231,240-41 * * * The statute was amended to its current form on September 17, 1986, replacing the corroboration requirement with a requirement that a cautionary jury instruction be given when accomplice testimony is presented. Id. We find no reason to distinguish the Ohio Supreme Court's definition of `accomplice' in one instance from that in the present case. Both the former and the current statute deal with issues surrounding the reliability of accomplice testimony. A new definition of `accomplice' is not required simply because the legislature chose to replace the corroboration requirement with a cautionary instruction."
 {¶ 147} Appellant urges this court to depart from theWickline requirement that the witness must be indicted for R.C.2923.03(D) to apply. In support of her argument, appellant relies onState v. Jones, Cuyahoga App. No. 88203, 2007-Ohio-1717. InJones, the Eighth Appellate District held that the trial court committed prejudicial error by failing to give a jury instruction on accomplice testimony pursuant to R.C. 2923.03(D) where the state relied heavily on the accomplice's testimony. Id. at ¶ 30-33. However, contrary to appellant's claim, the accomplice in Jones was not a witness who was promised immunity from prosecution in *Page 25 
return for testifying against the defendant at trial. Rather, the accomplice in Jones was a co-defendant who agreed to plead guilty to attempted murder and aggravated robbery with gun specifications. Id. at fn.1, ¶ 29. Moreover, the accomplice in Jones testified that he conspired with the defendant to kill the victim. Id. at ¶ 29. In this case, Amy Baker was neither indicted nor a co-defendant, did not enter into a plea agreement to a lesser charge, and did not admit to taking part in any crime for which appellant has been indicted in Clermont County. Accordingly, we decline to depart from the requirement inWickline, and we hold that the trial court did not err in failing to instruct the jury on accomplice testimony.
 {¶ 148} Appellant's fifth assignment of error is overruled.
 {¶ 149} Having overruled the first, second, fourth, fifth, and sixth assignments of error, we affirm appellant's convictions and sentences for felony murder, kidnapping, felonious assault, and three counts of endangering children. Having sustained the third assignment of error, appellant's involuntary manslaughter conviction is merged into the felony murder conviction and the involuntary manslaughter sentence is vacated.
 {¶ 150} Judgment affirmed as modified.
 YOUNG, P.J., and POWELL, J., concur. *Page 1