OPINION
{¶ 1} Defendant-appellant, Matthew McCullough, appeals his conviction and sentence in the Fayette County Court of Common Pleas on three counts of aggravated murder and one count each of murder, aggravated robbery, kidnapping, and attempted rape for which he was sentenced to life imprisonment without the possibility of parole for 58 years.
 {¶ 2} On the evening of June 28-29, 2000, Precious Canter was working as a pizza delivery driver for a pizza parlor in Washington Court House in Fayette County, Ohio. Shortly *Page 2 
after midnight, Canter delivered two pizzas to Benjamin Smith's residence. After paying Canter for the pizzas, Smith closed his door but as he was walking away, he heard someone say "hey" and a car horn honk twice. When he looked outside to investigate, Smith saw the pizza delivery car drive past his residence. Smith noticed that a black male was driving the vehicle. Believing he had not seen anything out of the ordinary, Smith returned to his pizza.
 {¶ 3} At approximately 1:30 a.m., Smith received a call from one of Canter's fellow employees who asked Smith if he had received his pizzas. Smith replied that he had, and that he also had seen the pizza delivery car being driven away by a black male. After being told there was no one with Canter, Smith became worried that something was wrong and notified the police.
 {¶ 4} The police made an immediate attempt to locate Canter. At approximately 4:30 a.m. that same morning, they discovered Canter's lifeless body in the parking lot of a middle school, only two blocks away from the residence where she had delivered pizza earlier that night. Her body, which was mostly undressed, was found lying in some shrubbery located in front of the car that she used to deliver pizza.
 {¶ 5} During their investigation of Canter's death, the police identified four individuals who may have been involved in the offense: Drew Potter, 16; Jamaal Robinson, 17; Kevin Terry, 18; and Matthew McCullough, 19. After the state agreed not to charge them as adults, Potter and Robinson told the police what happened on the night Canter was killed.
 {¶ 6} For several days in late June 2000, Potter, Robinson, Terry and McCullough stayed at Potter's residence while Potter's mother was out of town. During that time, the four teenagers got drunk, burglarized at least two residences, and stole a car and various other items such as car stereos, speakers, and CD players.
 {¶ 7} On the night Canter was killed, the four teenagers were driving in Potter's car *Page 3 
when they saw a pizza delivery car. At McCullough's request, Potter's car pulled over and McCullough got out, telling the others, "I'm going to get this money. I'll be right back." McCullough took another shirt with him to wrap around his face.
 {¶ 8} Shortly thereafter, McCullough came running back to Potter's car from the direction of a nearby middle school. When he got back inside the vehicle he told the others, "I think I killed that bitch." Potter saw that McCullough had blood on his shoes. Robinson saw that McCullough had blood on "his shirt and pants," and that "it looked like [the blood] was everywhere." McCullough held up a "black silky baggy that ha[d] a lot of money in it."
 {¶ 9} McCullough and the others returned briefly to the middle school so that McCullough could retrieve the shirt Potter had given him, which McCullough had left behind. The four teenagers then returned to Potter's residence where McCullough changed clothes. Potter and Robinson placed McCullough's bloody jeans and other items connected with the robbery in two trash bags, which they later threw alongside a road.
 {¶ 10} With Potter's cooperation, the police located the two garbage bags that he and Robinson had disposed of. Inside the bags, the police found a set of car keys later identified as belonging to Canter, a pair of blood-stained blue jeans, and a T-shirt. Subsequent DNA testing revealed that the blood on the blue jeans was consistent with Canter's DNA profile.
 {¶ 11} On July 7, 2000, McCullough was charged in a seven-count indictment with aggravated robbery (Count One), kidnapping (Count Two), rape (Count Three), one count of aggravated murder with prior calculation and design (Count Four), and three counts of aggravated murder while committing or attempting to commit aggravated robbery (Count Five), kidnapping (Count Six), and rape (Count Seven). All of the charges stemmed from Canter's killing, and each of the four aggravated murder charges were accompanied by death penalty specifications. *Page 4 
 {¶ 12} On September 17, 2001, McCullough pled guilty to one count each of aggravated robbery, kidnapping, and aggravated murder in exchange for the state's agreeing not to seek the death penalty and to dismiss the remaining counts in the indictment. The trial court found McCullough guilty of these charges and sentenced him accordingly.
 {¶ 13} McCullough appealed his conviction and sentence to this court. In State v. McCullough, Fayette App. No. CA2001-10-015, 2002-Ohio-5453, this court found that the trial court failed to comply with Crim. R. 11 when it accepted McCullough's guilty plea, and therefore, the plea was not made knowingly, intelligently, and voluntarily. As a result, this court reversed McCullough's conviction and sentence, vacated his guilty plea, and remanded the cause to the trial court for further proceedings.
 {¶ 14} In September and October of 2003, McCullough was tried by a jury on the original charges against him except for the charge of rape in Count Three, which, immediately prior to the start of trial, was amended to a charge of attempted rape. On October 6, 2003, the jury acquitted McCullough of aggravated murder with prior calculation and design, as charged in Count Four, but convicted him of the lesser included offense of murder. The jury also convicted McCullough of the three counts of aggravated murder, as charged in Counts Five, Six, and Seven, and one count each of aggravated robbery, kidnapping, and attempted rape, as charged in Counts One and Two and amended Count Three, respectively.
 {¶ 15} The trial court sentenced McCullough to life imprisonment without the possibility of parole for 30 years for his convictions for aggravated murder and murder, ten years in prison each for his convictions for aggravated robbery and kidnapping, and eight years in prison for his conviction for attempted rape. The trial court ordered McCullough to serve these sentences consecutively, leaving him with an aggregate prison term of life imprisonment without the possibility of parole for 58 years. *Page 5 
 {¶ 16} McCullough now appeals his conviction and sentence, assigning the following as error:
 {¶ 17} Assignment of Error No. 1:
 {¶ 18} "THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION FOR ATTEMPTED RAPE."
 {¶ 19} McCullough argues his attempted rape conviction should be reversed because the state failed to present sufficient evidence at trial to prove that he took a "substantial step" in a course of conduct planned to culminate in the offense of rape. We disagree with this argument.
 {¶ 20} "In reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70.
 {¶ 21} "Rape" is defined in R.C. 2907.02(A)(2), which states, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Attempt" is defined in R.C. 2923.02(A), which states, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 22} "`A "criminal attempt" is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.' State v. Woods (1976), 48 Ohio St.2d 127, * * * paragraph one of the syllabus, * * *. A substantial step involves conduct which is `strongly corroborative of the actor's criminal purpose.' Id. An attempt is complete when a defendant's *Page 6 
conduct or acts constitute a substantial step in a sequence of events designed to resulting in the perpetration of a crime. State v. Kane
(Apr. 23, 1984), Clermont App. No. CA83-09-076, * * * citingWoods, paragraph one of the syllabus." State v. Green (1997),122 Ohio App.3d 566, 569-570.
 {¶ 23} In this case, the evidence presented at trial showed that the victim's body was found stripped of most of her clothing; while the victim still had on her shoes and socks, her bra was torn and hanging on one arm, and her underwear was found a considerable distance from her body. Potter testified that after returning to the vehicle, McCullough had bragged, "I ate that bitch's p[.]" The evidence also showed the victim had injuries to her thigh and pubic area.
 {¶ 24} When this evidence is viewed in a light most favorable to the state as this court is required to do in reviewing McCullough's insufficient evidence claim, see McKnight, 2005-Ohio-6046 at ¶ 70, the state presented sufficient evidence to prove that McCullough took a substantial step in a course of conduct designed to result in the forcible rape of another in violation of R.C. 2907.02(A)(2). SeeGreen, 122 Ohio App.3d at 569-570.
 {¶ 25} Furthermore, despite McCullough's assertions to the contrary, there was sufficient evidence presented to show that (1) McCullough had adequate time to commit this offense; (2) the fact that the victim's clothing was torn was corroborative of McCullough's attempt to rape, as well as rob, the victim; and (3) the absence of semen on the victim's clothing or person was not inconsistent with the jury's finding McCullough guilty of the attempted rape charge.
 {¶ 26} McCullough's first assignment of error is overruled.
 {¶ 27} Assignment of Error No. 2:
 {¶ 28} "THE TRIAL COURT ERRED WHEN IT ADMITTED HIGHLY INFLAMMATORY *Page 7 
AND PREJUDICIAL EVIDENCE THAT CONTAINED LITTLE PROBATIVE VALUE."
 {¶ 29} McCullough argues the trial court erred in allowing the state to present duplicative photographs of the victim's nude body and to elicit graphic responses from a deputy coroner regarding some of the state's exhibits because the probative value of that evidence was substantially outweighed by its prejudicial impact. We find this argument unpersuasive.
 {¶ 30} Evid. R. 403(A) states, "[although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury."
 {¶ 31} "In capital cases, nonrepetitive photographs, even if gruesome, are admissible if relevant, as long as the probative value of each photograph outweighs the danger of material prejudice to the accused.State v. Maurer [1984], 15 Ohio St.3d 239, * * * paragraph seven of the syllabus. Decisions on the admissibility of photographs are `left to the sound discretion of the trial court.' State v. Slagle (1992),65 Ohio St.3d 597, 601 * * *." State v. Jackson, 107 Ohio St.3d 53, 69,2005-Ohio-5981, ¶ 81.
 {¶ 32} In this case, McCullough asserts that the state presented numerous photos from the crime scene, including photos of the victim in the condition in which she was found, which were unfairly prejudicial to him. However, the only ones he specifically identifies are Exhibits 173 and 177.
 {¶ 33} Exhibit 173 shows the injuries the victim sustained to her right thigh and pubic area. This evidence was plainly relevant to proving the attempted rape charge against McCullough. Exhibit 177 shows the victim nude and with severe injuries to her face. The photograph in Exhibit 177 is gruesome and even disturbing, but the evidence was clearly relevant to proving the elements of the offenses with which McCullough was charged, *Page 8 
including that he acted purposely and not simply with recklessness as McCullough tried to claim at one point during the proceedings. See, e.g., R.C. 2907.02(A)(2) ("No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.") See, also, R.C. 2903.01(B) ("No person shall purposely cause the death of another * * * while committing or attempting to commit * * * kidnapping, rape, * * * [or] aggravated robbery * * *.")
 {¶ 34} McCullough also argues the trial court erred in eliciting graphic responses from a deputy coroner regarding the evidence depicted in the testimony of prior witnesses or the state's exhibits. However, this evidence was relevant to showing that the death of the victim in this case was not an accident, and the probative value of this testimony was not outweighed by its prejudicial impact. See Evid. R. 403(A).
 {¶ 35} McCullough's second assignment of error is overruled.
 {¶ 36} Assignment of Error No. 3:
 {¶ 37} "THE TRIAL COURT ERRED WHEN IT GAVE IMPROPER JURY INSTRUCTIONS DURING THE MITIGATION PHASE OF APPELLANT'S TRIAL."
 {¶ 38} McCullough argues the trial court erred when it improperly defined "mitigating factors" as "factors that lessen the moral culpability of the defendant." Citing State v. Holloway (1988),38 Ohio St.3d 239, 242, he asserts that mitigating factors are not related to a defendant's culpability, but instead, are related to the question of whether the defendant should be sentenced to death.
 {¶ 39} However, the jury did not return a death sentence in this case. Therefore, any error committed by the trial court in defining the term "mitigating factor" was harmless and cannot provide the basis for a reversal since the alleged error could not have affected McCullough's substantial rights. See Crim. R. 52(A). *Page 9 
 {¶ 40} McCullough's third assignment of error is overruled.
 {¶ 41} Assignment of Error No. 4:
 {¶ 42} "APPELLANT WAS PREJUDICED WHEN HE RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 43} McCullough argues his trial counsel provided him with constitutionally ineffective assistance by having his original conviction overturned and his guilty plea vacated so that he could be tried on the original charges. He asserts that by doing so, his trial counsel left him exposed to the death penalty and increased the amount of time he must serve before he becomes eligible for parole. We find this argument unpersuasive.
 {¶ 44} To prevail on an ineffective assistance of counsel claim, a defendant must show (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Strickland v.Washington (1984), 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052. A failure to make a sufficient showing on either the "performance" or "prejudice" prong of the Strickland standard will doom a defendant's ineffective assistance claim. Id. at 697.
 {¶ 45} In this case, the decision by McCullough's trial counsel to appeal McCullough's original conviction in order to have McCullough's guilty plea vacated so that he could be tried on the original charges was a matter of trial strategy, to which this court owes broad deference. See id. at 689-690. While there were significant risks associated with trial counsel's strategy, there were also significant rewards that might have been gained by it. Specifically, by having McCullough's guilty plea vacated, trial counsel provided McCullough with an opportunity to win acquittal on some or possibly all of the charges against him. Because the performance of McCullough's trial counsel did not fall below an objective *Page 10 
standard of reasonableness, Strickland at 688, McCullough cannot prevail on his ineffective assistance claim. Id. at 697.
 {¶ 46} McCullough's fourth assignment of error is overruled.
 {¶ 47} Assignment of Error No. 5:
 {¶ 48} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT MADE CERTAIN FACTUAL FINDINGS IN IMPOSING CONSECUTIVE, MAXIMUM SENTENCES ON APPELLANT."
 {¶ 49} McCullough argues the trial court erred in imposing maximum and consecutive sentences for his convictions for aggravated robbery, kidnapping, and attempted rape, and a sentence of life imprisonment without any possibility of parole for 30 years for his convictions on three counts of aggravated murder after making certain judicial findings of fact pursuant to this state's former sentencing statutes. He argues those former sentencing statutes violated his right to a jury trial as set forth in Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531; and State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, and therefore, he is entitled to be resentenced as to those counts.
 {¶ 50} Foster held that certain provisions of Ohio's sentencing laws that required judicial fact-finding before imposition of (1) a sentence greater than the maximum term authorized by a jury verdict or the defendant's admission, (2) consecutive sentences, or (3) penalty enhancements for repeat violent offenders or major drug offenders violated an accused's right to a trial by jury, and therefore, were unconstitutional pursuant to Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, and Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531. See Foster at paragraphs one, three, and five of the syllabus.
 {¶ 51} The state acknowledges the trial court sentenced McCullough under the sentencing statutes in effect in at the time of his sentencing in 2003, and those statutes were *Page 11 
found to be unconstitutional in Foster. However, the state argues thatFoster does not apply in this case because this case was not pending on direct appeal when Foster was published. In support, the state points out that Foster was published on February 27, 2006, but that McCullough's motion for leave to file a direct appeal, which this court treated as an application for re-opening pursuant to App. R. 26(B), was not granted until May 29, 2007. We disagree with the state's argument.
 {¶ 52} Foster applies to all cases that were "pending on direct review or not yet final" at the time that decision was rendered. SeeFoster at ¶ 104. "[F]or a criminal action to be `pending on direct review' for purposes of [Foster], the criminal action must have been filed in the court at the time [the Ohio Supreme Court] announcedFoster and must have been awaiting an action or a decision at the time of [the Ohio Supreme Court's] decision in Foster." State v. Silsby,119 Ohio St.3d 370, 2008-Ohio-3834, syllabus.
 {¶ 53} A review of the record in this case shows that this matter was pending on direct appeal at the time Foster was published. McCullough's conviction and sentence were journalized on October 14, 2003. He filed a timely notice of appeal on November 12, 2003. When Foster was published on February 27, 2006, McCullough's direct appeal was still "pending" before this court, i.e., "awaiting an action or decision."Silsby. This court dismissed McCullough's direct appeal approximately two weeks later on March 16, 2006, due to his failure to file an appellate brief in the case. On April 16, 2007, McCullough moved for permission to file a delayed appeal, which this court treated as an application for re-opening due to ineffective assistance of appellate counsel and then granted on May 29, 2007.
 {¶ 54} While this court dismissed McCullough's appeal at one time because of his appellate counsel's failure to file a brief in support of McCullough's appeal, it is indisputable that McCullough's appeal was pending before this court at the time Foster was published, and *Page 12 
therefore, this case must be remanded for resentencing as to McCullough's convictions for aggravated robbery, kidnapping, and attempted rape.
 {¶ 55} As to McCullough's convictions on three counts of aggravated murder, McCullough's sentences for those offenses are affirmed to the extent they do not conflict with Foster because Foster did not find unconstitutional the provisions in R.C. 2929.03 that govern imposing sentence for aggravated murder convictions.
 {¶ 56} However, Foster did find that R.C. 2929.14(E)(4) and2929.41(A), which allowed for the imposition of consecutive sentences, were unconstitutional because they required judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences, and therefore, violated Apprendi and Blakely. See Foster, 109 Ohio St.3d at paragraph three of the syllabus. As a result, the trial court must decide on remand whether McCullough should be made to serve his sentences for his various convictions, including his convictions for aggravated murder, concurrently or consecutively.
 {¶ 57} McCullough's fifth assignment of error is sustained to the extent indicated.
 {¶ 58} Assignment of Error No. 6:
 {¶ 59} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S REQUEST TO INCLUDE THE LESSER INCLUDED OFFENSE OF MURDER WITH RESPECT TO COUNTS FIVE, SIX, AND SEVEN."
 {¶ 60} McCullough argues the trial court erred by denying his request to instruct the jury on the lesser included offense of murder as defined in R.C. 2903.02(B) with respect to the aggravated murder charges in Counts Five, Six, and Seven of the indictment. We disagree with this argument.
 {¶ 61} In determining whether an instruction on a lesser included offense is warranted, *Page 13 
a court must first determine whether the offense in the requested instruction is a lesser included offense of the charged offense. If so, the court must then determine whether the evidence at trial reasonably supports both an acquittal on the offense for which the defendant has been indicted and a conviction on the lesser included offense. State v.Smith, 89 Ohio St.3d 323, 330-331, 2000-Ohio-166. In making the second determination, the court must view the evidence in a light most favorable to the defendant. Id. at 331.
 {¶ 62} While the offense of murder, as defined in R.C. 2903.02(B), is a lesser included offense of aggravated murder, as defined in R.C. 2903.01(B), the evidence at trial, even when examined in a light most favorable to the accused, did not reasonably support both an acquittal on the aggravated murder charge and a conviction on the murder charge.
 {¶ 63} McCullough's sixth assignment of error is overruled.
 {¶ 64} Assignment of Error No. 7:
 {¶ 65} "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 66} McCullough argues the jury clearly "lost its way" when it failed to properly discount the unreliable testimony of Potter and Robinson in determining his guilt, and therefore, his convictions were against the manifest weight of the evidence. We disagree with this argument.
 {¶ 67} "A court considering a manifest-weight claim `review[s] the entire record, weighs the evidence and all reasonable inferences, [and] considers the credibility of witnesses.' State v. Martin (1983),20 Ohio App.3d 172, 175 * * *. The question is `whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.' Id. See also, State v. Thompkins (1997), 78 Ohio St.3d 380, 387."State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. *Page 14 
 {¶ 68} The complicity statute in R.C. 2923.03 states in relevant part:
 {¶ 69} "(D) If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 {¶ 70} "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 {¶ 71} "It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
 {¶ 72} McCullough acknowledges that the trial court instructed the jury on the need to view Potter's and Robinson's testimony with "grave suspicion" and weigh it with "great caution," but he asserts that the jury failed to do so. However, the record does not support this assertion.
 {¶ 73} Potter and Robinson, who were juveniles at the time the offense was committed, did receive favorable plea bargain agreements in exchange for their agreeing to testify against McCullough, and therefore, they had an incentive to lie. However, McCullough's trial counsel made the jury well aware of this fact during the trial, and it is clear from their verdict that the jurors chose to believe Potter's and Robinson's testimony anyway.
 {¶ 74} Furthermore, there were other witnesses who testified that they saw McCullough with blood on him shortly after the time the victim in this case was killed. Sarah Holsinger testified that she saw blood on McCullough's sock on the night in question. When she asked *Page 15 
McCullough about it, he told her it was mud and then pulled down his pant leg. Travis Huffman, who also saw McCullough on the night in question, testified that McCullough had "blood dots" that were "real faint" on his shirt. When Huffman asked McCullough about the blood spots, McCullough explained that he had been in a fight.
 {¶ 75} While the jury was obligated to view Potter's and Robinson's testimony with grave suspicion and great caution, see R.C. 2923.03(D), there is nothing in the record to show that the jury ignored this instruction.
 {¶ 76} McCullough's seventh assignment of error is overruled.
 {¶ 77} Assignment of Error No. 8:
 {¶ 78} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A CHANGE OF VENUE."
 {¶ 79} McCullough argues that "pretrial publicity, overwhelming community interest and the relatively modest-sized population of Fayette County precluded [him] from having his [case] tried before a fair and impartial jury because such notoriety developed pre-conceived notions as to what occurred in the case." We find this argument unpersuasive.
 {¶ 80} "Upon motion by either party, or by the trial court itself, a change of venue is appropriate where, `it appears that a fair and impartial trial cannot be held in the court in which the action is pending.' Crim. R. 18(B); see, also, R.C. 2901.12(K). It is within the trial court's discretion to determine whether to grant a motion for change of venue, and `appellate courts should not disturb the trial court's [venue] ruling * * * unless it is clearly shown that the trial court has abused its discretion.' State v. Lundgren, 73 Ohio St.3d 474,479, 1995-Ohio227, citing State v. Maurer (1984), 15 Ohio St.3d 239,250. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160 at ¶ 130. *Page 16 
 {¶ 81} "In `relatively rare' cases, adverse pretrial publicity can be so pervasive that a presumption of prejudice exists. Lundgren at 479, citing Nebraska Press Assn. v. Stuart (1976), 427 U.S. 539, 554,96 S.Ct. 2791, 2800. `A change of venue is not automatically granted when there is extensive pretrial publicity.' State v. Frazier,115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 235. Pretrial publicity — even pervasive, adverse publicity — does not inevitably lead to an unfair trial. Nebraska PressAssn. at 553.
 {¶ 83} "`[A] careful and searching voir dire provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality.' Frazier at ¶ 235, citingState v. Bayless (1976), 48 Ohio St.2d 73, 98. Further, a defendant claiming that pretrial publicity has denied [him or] her a fair trial must show that one or more jurors were actually biased. State v.Gross, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 29. See, also, State v.Mundt, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 67." State v. Carroll, Clermont App. Nos. CA2007-02-030, CA2007-3-041, 2007-Ohio-7075, ¶ 57-59.
 {¶ 84} Nothing in the record supports McCullough's contention that he was denied a fair and impartial trial because of pretrial publicity. While McCullough asserts that the notoriety of this case "developed pre-conceived notions as to what occurred in this case[,]" he has failed to cite any specific instance where a juror was adversely affected by pretrial publicity, but was, nevertheless, permitted to serve.
 {¶ 85} During voir dire, both parties extensively examined whether the prospective jurors would be fair and impartial. The voir dire in this case, which lasted for more than a week, was "careful and searching,"Carroll, 2007-Ohio-7075 at ¶ 59, quoting Frazier, 2007-Ohio-5048
at ¶ 235, and McCullough has not been able to point to anything in it that shows he did not obtain a fair and impartial jury. Furthermore, McCullough has failed to establish actual bias on the part of any juror.Carroll at ¶ 59. Therefore, we conclude that the trial court did not *Page 17 
abuse its discretion in refusing McCullough's request for a change of venue.
 {¶ 86} McCullough's eighth assignment of error is overruled.
 {¶ 87} Assignment of Error No. 9:
 {¶ 88} "CUMULATIVE ERRORS MAY DEPRIVE APPELLANT OF A FAIR TRIAL IN VIOLATION OF HIS RIGHT TO DUE PROCESS."
 {¶ 89} McCullough argues the cumulative effect of the errors set forth above deprived him of a fair trial. We disagree with this argument.
 {¶ 90} The doctrine of cumulative error provides that a defendant's "conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner,74 Ohio St.3d 49, 64, 1995-Ohio-168. The doctrine is inapplicable to cases where multiple instances of harmless error are not present. Id.
 {¶ 91} This court has sustained McCullough's fifth assignment of error and will remand the case for resentencing under Foster. We also found that the trial court may have erred in instructing the jury on what constitutes a mitigating factor, but concluded that error was harmless. Because McCullough has failed to demonstrate the existence of any other instance of harmless error, the cumulative error doctrine does not apply to this case. Garner.
 {¶ 92} McCullough's ninth assignment of error is overruled.
 {¶ 93} The trial court's judgment is reversed as to sentencing only, and this cause is remanded to the trial court for resentencing in accordance with the law of this state.
 WALSH, P.J., and BRESSLER, J., concur. *Page 1