[Cite as *State v. Vore*, 2013-Ohio-1490.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2012-06-049 |
| Plaintiff-Appellee, | : | CA2012-10-106 |
| | : | O P I N I O N |
| - vs - | | 4/15/2013 |
| | : | |
| WILLIAM B. VORE, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 10CR27091

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

William B. Vore, #A612-862, Richland Correctional Institution, 1001 Olivesburg Road, P.O. Box 8107, Mansfield, Ohio 44901, defendant-appellant, pro se

**PIPER, J.**

{¶ 1} Defendant-appellant, William Vore, appeals decisions of the Warren County Court of Common Pleas denying his motion for postconviction relief and a motion for a new trial.[1]

---

1. Vore filed two separate appeals, which will be consolidated for the purposes of issuing this single opinion.

{¶ 2} Vore was charged with robbery and grand theft after he entered a Fifth Third Bank and stole $9281. Vore handed the bank teller a note written on the back of a First National Bank deposit slip, which stated "This is A Robbery Give me All your 100s, 50s, 20s, Fast, no dye packs or alarms." [sic]. Once the teller gave Vore the money, he left the bank and fled. The bank teller then alerted her manager of the robbery and police began an investigation.

{¶ 3} Approximately one hour after the robbery, police took still-photographs from the bank surveillance video of the robbery and went to various businesses around the bank to see if anyone recognized the man seen in the video. Two employees of the nearby Motel 6 recognized Vore from the video and told police that Vore had been staying at the motel for a few days, but had checked out that morning. One employee told police that he saw Vore exit a dark blue or black car, "like a Nissan," and the other employee told police that Vore had been wearing the same clothes in the bank robbery video as he was wearing when he checked out of the motel. The employees gave police the registration information provided by Vore, and police continued their investigation.

{¶ 4} Police also investigated other nearby stores, and contacted the assistant manager of the local Biggs grocery store because the Biggs location had a First National Bank inside and could have been the source of the deposit slip used for the robbery note. The assistant manager gave police surveillance footage and still photographs of a man coming in the store, walking around the store for a moment or two, and then walking near the First National Bank branch before exiting the store. The man in the surveillance video was wearing the same outfit as the bank robber.

{¶ 5} Eventually, police learned that Vore was incarcerated in a Kentucky jail, and had been arrested approximately two weeks after the robbery for unrelated charges involving a police chase in which he was seen driving a black Nissan. Police obtained handwriting

samples from Vore, and two different handwriting experts concluded that Vore wrote the demand note used during the bank robbery. Vore was indicted on one count of robbery and grand theft, and the matter proceeded to a jury trial.

{¶ 6} The jury returned guilty verdicts, and the counts were merged for purposes of sentencing. The trial court sentenced Vore to five years in prison. Vore then appealed his convictions to this court, and we affirmed his convictions, but remanded so that the trial court could correct a sentencing error regarding post-release conditions. *State v. Vore*, 12th Dist. No. CA2011-08-093, 2012-Ohio-2431. Vore then filed a motion for postconviction relief and a motion for a new trial based upon newly discovered evidence with the trial court, both of which the trial court denied without holding a hearing. Vore now appeals the trial court's denial of postconviction relief and a new trial, raising the following assignments of error:

{¶ 7} Assignment of Error No. 1(A):

{¶ 8} THE TRIAL COURT ERRED AND ABUSED IT'S [sic] DISCRETION WHEN THE COURT DENIED APPELLANT'S POST-CONVICTION PETITION WITHOUT ORDERING AN EVIDENTIARY HEARING.

{¶ 9} Vore argues in his first assignment of error that the trial court abused its discretion by denying his petition for postconviction relief without first holding a hearing.

{¶ 10} According to R.C. 2953.21, a defendant may collaterally attack his conviction based upon an infringement or deprivation of his constitutional rights. In reviewing an appeal of postconviction relief proceedings, this court applies an abuse of discretion standard. *State v. Wagers*, 12th Dist. No. CA2011-08-007, 2012-Ohio-2258, ¶ 15. Rather than a mere error of law or judgment, an abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160.

- 3 -

{¶ 11} An evidentiary hearing is not automatically guaranteed each time a defendant makes a petition for postconviction relief, and instead, "the petitioner must show that there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits, and the files and records in the case." *State v. Watson*, 126 Ohio App.3d 316, 324 (12th Dist.1998); *see also* R.C. 2953.21(C). The burden is on the petitioner to show that the claimed errors resulted in prejudice before a hearing on a postconviction relief petition is warranted. *State v. Widmer,* 12th Dist. No. CA2012-02-008, 2013-Ohio-62, ¶ 164.

{¶ 12} Vore argues that his petition for postconviction relief was supported by affidavits and the necessary information to establish that he received ineffective assistance of counsel so that the trial court should have granted a hearing and allowed him to pursue his petition for postconviction relief. We disagree.

{¶ 13} When determining whether a defendant's Sixth Amendment right to effective assistance of counsel has been violated, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged actions 'might be considered sound trial strategy.'" *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052 (1984), quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶ 14} Within *Strickland*, the Supreme Court established a two-part test which requires an appellant to establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Myers*, 12th Dist. No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing *Strickland*. Regarding the first prong, an appellant must show that his counsel's

representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 15} Vore argues several reasons why he received ineffective assistance of counsel. First, he argues that his defense counsel was ineffective for failing to investigate and subpoena Yvonne Baker, who was an employee of a Subway restaurant located across the street from Fifth Third Bank. Baker told police during their investigation that she recognized the bank robber as someone who had come to her restaurant the day before the robbery. Baker told police that the suspect was a heavy-set white male who was missing some of his front teeth. Baker then positively identified Vore when showed a photograph taken from Vore's drivers license.

{¶ 16} Vore asserts that had his trial counsel called Baker to the stand to testify to the missing teeth comment, the results of his trial would have been different because he could prove that he was not missing any of his front teeth. However, Vore failed to demonstrate that the jury would have found him not guilty had Baker testified that she told police that the man she recognized from the photograph was missing some of his front teeth. The fact remains that Baker positively identified Vore as the suspect after viewing his drivers license photograph, regardless of whether he was missing his front teeth. Even if Baker had been called and testified about the missing teeth, the jury heard testimony from other witnesses who made identifications of Vore, including two handwriting experts. Therefore, there is no indication that testimony from Baker would have resulted in a different result or that not having Baker's testimony was prejudicial to Vore.

{¶ 17} Vore next argues that defense counsel was ineffective for failing to move the trial court to suppress the in-court identifications made of him by several witnesses because

he claims that the identifications were the result of an impermissibly suggestive manner by the state. However, the record indicates that defense counsel extensively cross-examined the witnesses who made in-court identifications of Vore, and attacked these identifications to raise possible doubt in the jury's mind as to their validity. The fact that the jury found the identifications credible, however, did not render counsel's performance deficient or prejudicial. Moreover, and as previously stated, the state presented testimony from two handwriting experts that Vore wrote the robbery demand letter, which was also evidence of his identification.

{¶ 18} Vore next argues that counsel was defective for failing to introduce evidence to challenge and impeach the credibility of two of the state's witnesses who made identification of Vore as the bank robber. However, the record indicates that defense counsel cross-examined the state's witnesses, and pointed out potential inconsistences in their testimony. The witnesses' identifications were matters of credibility for the jury to determine. This is especially true where Vore argues that his counsel was deficient for not offering impeachment evidence to challenge one witness' statement that the bank robber wore glasses. However, the jury was given the surveillance footage and still photographs indicating that the robber did not wear glasses. Therefore, the jury was well aware of the issues regarding identification by the state's witnesses, and as such, defense counsel was not ineffective.

{¶ 19} Vore also asserts that his counsel was ineffective for failing to investigate and subpoena William Hilliard who was a fingerprint examiner to testify that Vore's fingerprints were not found on the robbery demand note. However, the jury was given evidence that none of the latent prints found at the robbery scene and on the note had been matched to Vore. Therefore, defense counsel not calling Hilliard to offer redundant testimony was not prejudicial and doing so would not have resulted in a different result.

**{¶ 20}** Vore next asserts that trial counsel was ineffective for failing to move to suppress evidence of a statement made by a detective when police were trying to obtain a search warrant to search Vore's car. Vore's car had been impounded in Kentucky after the police chase ended and he had been arrested. Warren County officers were able to procure the search warrant, but Vore does not state in what way the detective's purported statement was prejudicial to him during the procurement of the warrant. Nor does Vore demonstrate how the result of his trial would have been different had the warrant not been obtained. As a result of the warrant, police took photos of Vore's impounded car as well as the cash found within Vore's car. However, even in the absence of the photos of the car and cash, the jury heard other evidence indicating Vore's participation in the robbery and we cannot say the results of his trial would have been different absent the photographs taken from Vore's car.

**{¶ 21}** Vore also claims that his trial counsel was ineffective for failing to introduce evidence that the currency found in his car when he was arrested after the police chase in Kentucky was not the same money taken from the bank robbery. However, counsel's decision not to attribute the $558 found in Vore's car to any one source falls within sound trial strategy. Vore essentially claims that he had a large amount of cash on his person because he was employed. However, he does not indicate in any way how the money could be proven to have come from his employment, or how there was any way to prove that it did not come from the bank robbery. Moreover, defense counsel was able to establish evidence through cross-examination that the $558 in cash was eventually released to Vore's sister, which would tend to indicate that the Kentucky police did not believe it was associated with a crime. Had defense counsel chosen to pursue this issue at trial without any way to prove where the money came from instead of simply eliciting evidence that the money was returned to Vore's sister, there is no indication that the results of Vore's trial would have been different.

**{¶ 22}** Vore next argues that his trial counsel was ineffective for failing to investigate Crime Stoppers leads. While Vore contends that his counsel failed to investigate any leads to Crime Stoppers, he fails to demonstrate that any such calls were made to Crime Stoppers or that there were any actual leads to investigate. Even if there had been evidence submitted of Crime Stoppers tips, there is no indication that any such tips would have been reliable or caused police to investigate in any other manner than they did.

**{¶ 23}** Vore also asserts that he received ineffective assistance of counsel because defense counsel failed to object to testimony regarding uncharged prior bad acts and failed to request a cautionary jury instruction regarding the purpose of the evidence. The jury heard evidence that Vore was arrested in Kentucky after a police chase, and that upon his arrest, police found a black pellet gun and $558 in cash in Vore's car. However, there is nothing in the record to indicate that the jury convicted Vore based on any indication of prior bad acts, or that the police chase in Kentucky weeks after the robbery was the basis upon which the jury determined Vore's guilt.

**{¶ 24}** Vore next argues that his counsel was ineffective for failing to object to the state's introduction of evidence that defense counsel's own handwriting expert concluded that Vore wrote the robbery demand note. However, there was no reason that the expert's opinion should not have been admitted. Moreover, defense's expert opinion was the same as the state's expert witness, and therefore was cumulative to other evidence and testimony before the jury regarding Vore's handwriting analysis.

**{¶ 25}** Vore also asserts that his counsel was ineffective for failing to investigate and subpoena a potential alibi witness. Vore argues that an unknown woman accompanied him to Cincinnati on the day of the robbery. However, Vore presented no evidence regarding the woman's identity or her whereabouts, and defense counsel is under no obligation to locate unknown and unidentified witnesses.

{¶ 26} Vore next argues that defense counsel was ineffective for failing to investigate and subpoena two bank tellers from First National Bank who worked at the branch in Biggs. Vore claims that these bank tellers would have testified that they did not see Vore in the branch. However, the jury was shown the video surveillance from Biggs, wherein he was shown walking near the bank, but did not enter the branch. Therefore, there is no indication that the result of the trial would have been different had the tellers testified that Vore did not enter the branch, as the state never claimed that he did. The state only asserted that Vore walked close enough to take the deposit slip.

{¶ 27} Vore finally argues that his counsel was ineffective for failing to investigate and subpoena Detective Brian Payne to impeach the testimony of one of the Fifth Third Bank tellers, who made an in-court identification of Vore during the trial as the man who robbed the bank. During the police investigation, the witness told police that she had not seen anything during the robbery. After the witness made the in-court identification, defense counsel cross-examined the witness extensively about her comment to police that she had not seen anything during the robbery. The witness admitted that she had made the statement to police, and there was no need to call the detective to the stand when the witness readily admitted that she first told police that she had not seen anything during the robbery.

{¶ 28} After thoroughly reviewing the file, we do not find that the trial court abused its discretion in denying Vore's postconviction relief petition, and for doing so without first holding a hearing. As such, Vore's first assignment of error is overruled.

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT ERRED WHEN THE COURT FAILED TO MAKE SUFFICIENT FINDINGS OF FACT AND ADDRESS ALL OF THE APPELLANT'S CLAIMS RAISED IN HIS INITIAL AND AMENDED AND SUPPLEMENTAL CLAIMS RAISED IN HIS POST-CONVICTION. [sic]

**{¶ 31}** Vore argues in his second assignment of error that the trial court failed to make sufficient findings of fact regarding all of the claims raised in his petition for postconviction relief.

**{¶ 32}** According to R.C. 2953.21(G), "if the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition." The purpose of requiring findings of fact and conclusions of law is to apprise the petitioner of the basis for the court's disposition and to facilitate meaningful appellate review. *State v. Sims*, 12th Dist. No. CA2005-08-077, 2006-Ohio-3091, ¶ 9, citing *State ex rel. Carrion v. Harris*, 40 Ohio St.3d 19 (1988). However, a trial court "need not discuss every issue raised by appellant or engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law. The findings need only be sufficiently comprehensive and pertinent to the issue to form a basis upon which the evidence supports the conclusion." *State v. Calhoun*, 86 Ohio St.3d 279, 291-292 (1999).

**{¶ 33}** In the present case, the trial court issued a judgment entry addressing Vore's claims and explaining why Vore's arguments were without merit. The trial court's nine-page entry was detailed and well-reasoned so that this court had an ample basis upon which we conducted a meaningful review. While Vore argues that there were four additional grounds upon which his petition for postconviction relief should have been granted, the trial court's judgment entry included adequate findings of fact and conclusions of law to satisfy the requirements of R.C. 2953.21(G). As such, Vore's second assignment of error is overruled.

**{¶ 34}** Assignment of Error No. 1(B):

**{¶ 35}** THE TRIAL COURT ERRED AND ABUSED IT'S [sic] DISCRETION WHEN THE COURT DENIED APPELLANT'S MOTION FOR LEAVE OF COURT TO FILE A DELAYED MOTION FOR NEW TRIAL WHEN APPELLANT'S MOTION WAS

- 10 -

SUBSTANTIALLY SUPPORTED WITH CREDIBLE EVIDENCE THAT DEMONSTRATED THE STATE INTENTIONALLY WITHHELD <u>BRADY</u> EVIDENCE AND SUBORNED PERJURY AT TRIAL AND APPELLANT DEMONSTRATED BY CLEAR AND CONVINCING PROOF THAT HE WAS UNAVOIDABLY PREVENTED FROM DISCOVERING THIS EVIDENCE AND SHOWED REASONABLE DILIGENCE IN OBTAINING THIS NEWLY DISCOVERED EVIDENCE RELIED UPON.

{¶ 36} Vore argues in this assignment of error that the trial court abused its discretion in denying his motion for a new trial.

{¶ 37} Vore asserts that the trial court erred in not granting him leave for a new trial based on newly discovered evidence. Vore argues that the newly discovered evidence is a surveillance video taken from a Biggs supermarket near the Fifth Third Bank, which also houses a First National Bank. The demand note used during the robbery of Fifth Third Bank was written on a deposit slip issued by First National Bank. Vore argues that the Biggs surveillance video clearly shows that he was not the same man seen taking a deposit slip from the First National Bank within Biggs. Although Vore admits that he had had knowledge of the Biggs surveillance video well before trial, he now claims that the video is newly discovered evidence because he now understands the significance of the video.

{¶ 38} Crim.R. 33 provides the grounds for which the trial court may grant a new trial and sets forth the time limitations for filing a motion for a new trial. Motions for a new trial on the basis of newly discovered evidence must be filed within 120 days of the verdict. Crim.R. 33(B). However, the trial court may grant the defendant leave to file a belated motion if "it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely" within this time period. *Id.*

{¶ 39} In order to prevail on a motion for a new trial based upon newly discovered evidence, the defendant must establish that the evidence,

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Petro,* 148 Ohio St. 505 (1947), syllabus. An appellate court may not disturb a trial court's decision denying a motion for a new trial absent an abuse of discretion. *State v. Widmer*, 12th Dist. No. CA2012-02-008, 2013-Ohio-62.

{¶ 40} Vore also asserts that the state's suppression of the Biggs surveillance video constituted a violation of the Fourteenth Amendment based on the United States Supreme Court decision, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). As stated by the Ohio Supreme Court,

> Suppression by the prosecution of evidence that is favorable to the accused and "material either to guilt or to punishment" is a violation of due process. Evidence suppressed by the prosecution is "material" within the meaning of *Brady* only if there exists a "reasonable probability" that the result of the trial would have been different had the evidence been disclosed to the defense. As the United States Supreme Court has stressed, "the adjective ['reasonable'] is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

(Internal citations omitted.) *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 27, quoting *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S.Ct. 1555 (1995).

{¶ 41} After reviewing the record, we do not find that the trial court abused its discretion in denying Vore's request for a new trial based on newly discovered evidence, or that the state did anything to suppress the video in violation of Vore's due process rights as stated in *Brady*. Instead, within his affidavit, Vore plainly admits that he was made aware of the Biggs surveillance video prior to his trial, as detectives with the Warren County Sheriff's

- 12 -

Office interviewed Vore before his trial and showed him still-photographs taken from the Biggs surveillance footage specific to someone taking a deposit slip from the counter. Moreover, there was mention made of the Biggs surveillance video at trial so that Vore cross-examined witnesses about it.

{¶ 42} During trial, the Biggs assistant manager explained to the jury the contents of the surveillance video, including that the man in the video is seen entering the store and making a short loop around the store before going up to the First National Bank branch. During the assistant manager's testimony, the following exchange occurred.

> [Q] And did you find video footage of when he actually left the building?
>
> [A] Was there not another section of footage?
>
> [Q] That's all we have.
>
> [A] Okay.  Yeah, I think what there was was [sic] it shows him grabbing like a withdrawal slip, something like that off of the bank counter.

During cross-examination, the Biggs assistance manager admitted that none of the videos at trial showed anyone picking up a deposit slip.  The trial court then instructed the jury that it was to disregard any testimony regarding a video depicting the suspect approaching the counter and taking a slip because the video was not being offered into evidence.

{¶ 43} Although the state did not have the video, Vore had knowledge of the video and could have taken the proper steps to enter it into evidence.  The record demonstrates that the trial court held a sidebar, which was not made a part of the record.  Therefore, this court has no knowledge if defense counsel moved for a continuance or took any steps to secure the video.  Regardless, the fact remains that the trial court instructed the jury regarding the missing video, and all parties were made aware of its existence.

**{¶ 44}** Regarding *Brady*, there is nothing on the record to indicate that the state did anything to suppress the video. Instead, the state clearly indicated during its direct examination of the Biggs assistant manager that it did not have the video, and the Biggs assistant manager stated that he was the individual responsible for providing the video clips and still photographs. Therefore, there is no indication in the record that the state had any part in intentionally editing the video to exclude footage of the suspect walking up to the counter and retrieving a bank slip.

**{¶ 45}** Beyond *Brady* and the fact that the video is not newly discovered evidence, Vore has failed to prove that the Biggs surveillance video would have changed the outcome of the case had a new trial been granted. Instead, and even if there was a video that showed someone else taking a bank deposit slip from First National Bank, the jury heard testimony from several witnesses who identified Vore as the bank robber, including two handwriting experts who concluded that Vore wrote the robbery demand note. Vore has failed to carry his burden to demonstrate that he was entitled to a new trial. As such, Vore's final assignment of error is overruled.

**{¶ 46}** Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.