[Cite as *State v. Bowman*, 2023-Ohio-2818.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-05-005 |
| | : | O P I N I O N |
| - vs - | | 8/14/2023 |
| | : | |
| PRESTON L. BOWMAN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case Nos. CRI 20220009 and CRI 20220043

Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.

**BYRNE, J.**

{¶ 1} The Fayette County Court of Common Pleas convicted Preston L. Bowman of two counts of vandalism, and Bowman appeals those convictions. For the reasons described below, we affirm Bowman's convictions.

**I. Facts and Procedural Background**

{¶ 2} In January 2022, a Fayette County grand jury indicted Bowman for one count of vandalism, a felony of the fifth degree ("Case One"). In February 2022, a Fayette County

grand jury indicted Bowman for another count of vandalism, a felony of the fourth degree ("Case Two"). Both counts were charged as violations of R.C. 2909.05(B)(2), which makes it a crime to knowingly cause "serious physical harm" to property owned by a governmental entity.

{¶ 3} "Serious physical harm" is defined as "physical harm to property that results in loss to the value of the property of one thousand dollars or more." R.C. 2909.05(F)(2). Vandalism causing at least $1,000 in loss to the value of property is a felony of the fifth degree, unless the "value of the property or the amount of physical harm involved" is $7,500 or more but less $150,000, in which case the offense is a felony of the fourth degree. R.C. 2909.05(E).

{¶ 4} Case One involved allegations that Bowman, on October 10, 2021, tore a sink off the wall of his jail cell at the Fayette County Jail and threw the sink at the narrow pane of glass in his cell door, cracking the glass. Case Two involved allegations that on December 22, 2021, Bowman and other inmates in the jail's "G-Pod" broke five large windows in the pod by repeatedly throwing a metal bolt at the windows. The indictment in Case Two alleged that the value of physical harm caused by Bowman was more than $7,500 but less than $150,000.

{¶ 5} The court consolidated Cases One and Two for purposes of a jury trial, which commenced in May 2022.

**A. The Trial**

{¶ 6} Bowman does not challenge the state's evidence indicating that he was responsible for causing the physical harm to government property in Cases One and Two. Therefore, we need not repeat all the evidence submitted at trial except to say that the state produced witnesses who testified about observing Bowman damaging his jail cell and the G-Pod windows.

- 2 -

{¶ 7} Instead, this appeal concerns the evidence related to the costs of the physical harm. Of relevance to that issue, Lieutenant Matthew Weidman testified that he was employed by the Fayette County Sheriff's Office as a jail administrator. Lt. Weidman testified concerning the costs expended by the sheriff's office to repair the physical harm to property caused by Bowman in both cases.

{¶ 8} Regarding Case One, Lt. Weidman testified that the sheriff's office replaced the sink at a cost of $1,250 and replaced a cracked glass panel at a cost of $400, for a total repair cost of $1,650.

{¶ 9} Regarding Case Two, Lt. Weidman stated that the damaged windows had not yet been repaired. However, the state introduced Exhibit 18, which was an estimate from a contractor, Pauly Jail Building Co. The contractor proposed to replace five panels of glass at a total cost of $10,670, which price included freight, materials, and labor. Lt. Weidman believed that the estimate from Pauly Jail Building Co. was an accurate estimate for the cost to repair the five glass panels. Lt. Weidman explained that these were "big" panes of glass and that they were tempered detention grade glass with a mirrored side.

{¶ 10} Bowman presented no testimony or other evidence in his defense.

{¶ 11} The jury returned guilty verdicts on all charges. Regarding Case One, the jury found that the physical harm to property was $1,000 or more. Regarding Case Two, the jury found that the amount of physical harm to the property was $7,500 or more but less than $150,000.

**B. Discovery of Restitution Documents**

{¶ 12} While the jury was deliberating, the court informed the attorneys that during closing arguments the court had located a document in its internal file that was delivered to

the court sometime during the case.[1]  We will refer to this document as the "Undisclosed Document."  The prosecutor stated that the Undisclosed Document appeared to have come from the state and was a restitution document.  The prosecutor indicated that it would be standard practice for that document to be delivered to the court by the victim advocate for use by the court for victim impact and restitution purposes.  The prosecutor represented that the Undisclosed Document had not been made a part of the original case file and was not "brought over" to the prosecutor's office from the sheriff's office.  The prosecutor claimed to have never seen the Undisclosed Document and for that reason it was not shared in discovery.  The prosecutor admitted that the Undisclosed Document should have been provided to the defense but that the failure to share it was an "oversight" by the prosecutor's office.

{¶ 13} Defense counsel stated that she would need to review the Undisclosed Document to determine what effect it may have.

### C. Motion for a New Trial

{¶ 14} Prior to sentencing, Bowman moved for a new trial pursuant to Crim.R. 33. The motion recounted the facts related to the discovery of the Undisclosed Document.  The motion noted that one of the pages was an estimate for repairs for the Case One incident and that Bowman believed this estimate indicated that the value of the glass repaired was $3,200.  Bowman also believed that another page of the Undisclosed Document indicated that the same glass had been in fact replaced at a much lower cost of $626.  (We note that the testimony at trial was that it was replaced for $400, not $626.)  Bowman acknowledged that the Undisclosed Document "would not have necessarily aided" him in his defense as to Case One but that the Undisclosed Document might have "led to questions regarding

---

1. We refer to the six-page "document," in the singular.  However, as will be described more fully below, the "document" appears to actually be a collection of different documents totaling six pages.

[Case Two]" and whether the windows alleged to have been damaged in the December incident could have a lesser replacement or restoration value than was testified to at trial. Bowman's motion did not cite any specific provision within Crim.R. 33 as grounds for a new trial and Bowman also did not attach any affidavit in support.

{¶ 15} Crim.R. 33 lists six "causes affecting materially [the defendant's] substantial rights" for which a new trial may be granted. The state opposed Bowman's motion for a new trial, noting that Bowman had failed to cite which of the six "causes" stated in Crim.R. 33 applied. The state also noted that Bowman failed to file an affidavit in support of his motion for a new trial. The state argued that the Undisclosed Document would not have aided Bowman in the preparation of his defense.

{¶ 16} In a hearing immediately prior to Bowman's sentencing, the court announced that it was denying Bowman's motion for a new trial on the basis that "the authority cited by the State of Ohio is applicable in this case." The court did not further explain its reasoning at the hearing, or in the judgment entry of conviction.

{¶ 17} The court sentenced Bowman to a prison term. Bowman appealed, raising three assignments of error.

## II. Law and Analysis

### A. Motion for a New Trial

{¶ 18} Bowman's first assignment of error states:

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT-APPELLANT'S MOTION FOR A NEW TRIAL.

{¶ 19} Bowman argues that the court erred by denying his motion for a new trial because the Undisclosed Document would have permitted him to impeach the state's evidence concerning damages in Case Two.

#### 1. Applicable Law and Standard of Review

{¶ 20} Initially, we note that Crim.R. 33 was recently amended with an effective date of July 1, 2022. The trial court's decision on Bowman's motion for a new trial was issued in May 2022. As such, we apply the version of Crim.R. 33 in effect at the time of the decision, not the version of the rule now in effect. *State v. Rarden*, 12th Dist. Butler No. CA2021-07-090, 2022-Ohio-873, ¶ 9, fn. 1. All references to Crim.R. 33 in this opinion will be to the version of the rule in effect at the time of the trial court's decision.

{¶ 21} Crim.R. 33 provides that "[a] new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * *," and then lists six causes. We will discuss those six possible grounds for relief more fully below.

{¶ 22} An appellate court may not disturb a trial court's decision denying a motion for a new trial absent an abuse of discretion. *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 39. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 170.

### 2. Analysis

{¶ 23} In his motion for a new trial, Bowman did not specify which of the Crim.R. 33 grounds for a new trial he believed entitled him to a new trial. Nor has he done so on appeal. We will therefore review and analyze each of the six possible Crim.R. 33 grounds for relief in turn in order to analyze whether the trial court abused its discretion in denying Bowman's motion for a new trial.

{¶ 24} First, Crim.R. 33(A)(1) provides that a new trial may be granted on the basis of "[i]rregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial * * *." But Bowman in his Crim.R. 33 motion did not allege that any irregularity occurred

in the trial proceedings themselves or that any order or ruling of the court prevented him from having a fair trial. Nor has Bowman argued on appeal how this subsection applies. Accordingly, we find Crim.R. 33(A)(1) inapplicable.

{¶ 25} Second, Crim.R. 33(A)(2) provides that a new trial may be granted on the basis of "[m]isconduct of the jury, prosecuting attorney, or the witnesses for the state * * *." But Bowman did not allege any "misconduct" by the prosecutor in his Crim.R. 33 motion. Instead, Bowman argued that a document was not provided in discovery and the state conceded it should have been. While this perhaps suggests an accusation of prosecutorial misconduct, the motion did not clearly make such an allegation. Regardless, Crim.R. 33(C), entitled "Affidavits Required," provides that "[t]he causes enumerated in subsection (A)(2) and (3) *must* be sustained by affidavit showing their truth, and may be controverted by affidavit." (Emphasis added.) The plain language of Crim.R. 33(C), and the word "must" demonstrate that an affidavit is a mandatory requirement. *State v. Carroll*, 12th Dist. Clermont Nos. CA2007-02-030 and CA2007-03-041, 2007-Ohio-7075, ¶ 71 ("Appellant failed to file an affidavit in support of her motion for a new trial as required by Crim.R. 33[C]"). Bowman filed no affidavit to support any allegations under this subsection. We conclude Bowman did not bring his motion for new trial pursuant to Crim.R. 33(A)(2), and we find Crim.R. 33(A)(2) inapplicable.

{¶ 26} Third, Crim.R. 33(A)(3) provides that a new trial may be granted on the basis of "[a]ccident or surprise which ordinary prudence could not have guarded against * * *." But Bowman made no reference to accident or surprise occurring at trial in his Crim.R. 33 motion and, again, filed no affidavit as required by Crim.R. 33(C). We conclude Bowman did not bring his motion for new trial pursuant to Crim.R. 33(A)(3), and we find Crim.R. 33(A)(3) inapplicable.

{¶ 27} Fourth, Crim.R. 33(A)(4) provides that a new trial may be granted on the basis

> That the verdict is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified * * *.

Bowman did not argue that the jury verdict was contrary to law or that the evidence showed that he was not guilty of vandalism but rather, guilty of a lesser crime, in his Crim.R. 33 motion for a new trial. Nor has Bowman argued on appeal how this subsection applies. We conclude Bowman did not bring his motion for new trial pursuant to Crim.R. 33(A)(4), and we find Crim.R. 33(A)(4) inapplicable.

{¶ 28} Fifth, Crim.R. 33(A)(5) provides that a new trial may be granted on the basis of an "[e]rror of law occurring at the trial * * *." But Bowman did not argue in his Crim.R. 33 motion that an error of law occurred at trial. We conclude Bowman did not bring his motion for new trial pursuant to Crim.R. 33(A)(5), and we find Crim.R. 33(A)(5) inapplicable.

{¶ 29} Sixth, Crim.R. 33(A)(6) provides that a new trial may be granted:

> When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

Given the record before us, we believe the ground for relief set forth in Crim.R. 33(A)(6) was the basis for Bowman's Crim.R. 33 motion, even if he did not state this explicitly. Bowman argued in his motion for a new trial that the Undisclosed Document "should have been disclosed" and constituted new evidence that "could have impacted the outcome of [Bowman's] trial." This amounts to arguing that the Undisclosed Document was "new

- 8 -

evidence material to the defense" under Crim.R. 33(A)(6).

{¶ 30} The Ohio Supreme Court has held that to grant a new trial based on newly discovered evidence, a defendant must show that the new evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Seiber*, 56 Ohio St.3d 4, 17 (1990). The state concedes that two of these elements were satisfied here. Specifically, the state concedes that the evidence was discovered after trial (second element) and could not have been discovered in the exercise of due diligence before the trial by Bowman (third element). Thus, we need not review those two elements.

{¶ 31} Upon our review of the Undisclosed Document, we do not believe that Bowman has demonstrated the first *Seiber* element—that is, Bowman has not demonstrated a "strong probability" that the Undisclosed Document would change the result if a new trial were granted. The Undisclosed Document is six pages, however, only three pages appear relevant to the arguments asserted in Bowman's motion for a new trial. Page One, titled "Fayette County expenses/loss of use" depicts a spreadsheet that appears to list expenses associated with the damages from Case One. We can infer that Page One relates to Case One because the page states, "State vs. Preston Bowman" at the top and lists a cost for a replacement sink, which roughly corresponds to the amount testified to at trial to replace the sink ($1,267.94 on Page One compared with the $1,250 cost testified to at trial).

{¶ 32} The spreadsheet includes the following item (among others):

| *Vendor* | *Description* | *Cost* |
|---|---|---|
| | * * * | |

| *The Pauly Jail Building Co.* | *Replacement Glass* | *$ 626.00* |

*  *  *

This amount, $626, does not correspond to the testimony at trial that the glass was repaired at a cost of $400.  But there is nothing else on Page One that informs us that the cost to replace the pane of glass that Bowman damaged in October 2021 was actually $626 rather than $400.  Nor do we know who prepared this document, the source or basis for listing $626 as the "cost" of "[r]eplacement [g]lass," or how that amount may or may not relate to the $400 repair costs testified to a trial.  It is possible that the state merely had a different vendor other than Pauly Jail Building Co. bid on replacing the glass and accepted the lower bid.  Or perhaps there is some other explanation.  We simply cannot know in the absence of an affidavit explaining Page One of the Undisclosed Document, or some other evidence presented to the trial court and made a part of the record.

{¶ 33} The next relevant page, Page Three, appears to be a proposal dated October 21, 2021, from Pauly Jail Building Co.  In it, the company proposes to furnish "4 Panes" of

*13/16" Clear Secur-Tem + Poly (2115), Dimensions: 7"x32"*

to the Fayette County Jail.  This proposal, which includes all the "listed materials" plus freight, is offered for $1,565.  At the bottom of the page, in handwriting, appears the notation "$626.00 each."

{¶ 34} Page Three perhaps relates to Case One, given the date.  But the proposal does not explain why a quote was needed for four panes of glass when only one pane was damaged by Bowman in the Case One incident.  We also do not know who hand-wrote the "$626.00 each" notation at the bottom of the page and we do not know why that amount was written on the document.  Additionally, $626.00 is not one quarter of the proposal's total stated amount of $1,565 (rather, $626 x 4 = $2,504), so it is not clear that the $626

value at the bottom of the page is even related to the proposal.

{¶ 35} The final relevant page of the Undisclosed Document is Page Four, which is a form document titled "The Window Man." It is not clear if this document is an estimate, a proposal, an invoice, or something else, or even if the item or work listed on the document was provided or performed. However, the form document appears to be directed to the Fayette County Sheriff's Office and is dated December 22, 2021, which was the same day as the Case Two incident. The document lists the following: "PC Lexan 3/4-Inch," and lists the quantity of this item as "1." The price listed is "$3200.00." At the bottom of Page Four, in handwriting, appears the notation,

$$7" \times 32" = 215.04^2$$

{¶ 36} If Page Four relates to Case Two, then we must assume that the jail was able to obtain a same-day quote to replace damaged windows. This seems unlikely, though possible. Bowman argues—without explanation—that Page Four relates to the glass at issue in Case One. But we know little more than what is stated on the document. Is a "PC Lexan 3/4-Inch" a replacement for the windows damaged in Case Two? If so, why does Page Four list the quantity of "PC Lexan 3/4-Inch" as "1," not five? Or is it related to the glass damaged in Case One? Or does the "PC Lexan 3/4-Inch" relate to some other window replacement, unrelated to either of Bowman's cases? What is the significance of the handwriting at the bottom of the page? There is no context for what it might indicate, or whether it is even pricing information.

{¶ 37} Bowman claims that these documents show that the actual cost of replacing the windowpane in Case One was $626, which he points out is significantly less than the

---

2. The ".04" could also be ".09." It is not clear whether this handwritten notation appeared on the original "The Window Man" document, or if that document was scanned and the handwriting appeared on a printed copy of that scanned image, below the scanned image of the original "The Window Man" document. The second possibility is suggested by the line that appears on one side of the document image, and by the phrase, "Scanned with Cam Scanner," which appears at the bottom of the page.

$3,200 figure mentioned on Page Four, which he believes relates to Case One. Following this argument, Bowman states that the Exhibit 18 estimate with respect to Case Two, which was corroborated by Lt. Weidman, may have been much too high, and thus, there is some possibility that the actual damages with respect to Count Two would have been less than $7,500 and Bowman could have been found guilty of fifth-degree-felony vandalism rather than fourth-degree-felony vandalism.

{¶ 38} As described above, Bowman's arguments concerning the meaning and significance of the Undisclosed Document are based on multiple assumptions about the meaning of various pages and notations in the Undisclosed Document. Bowman assumes that the estimated cost to replace the single windowpane in Case One was $3,200 but that the actual cost ended up being $626. We find this assumption to be questionable. We cannot reach the same assumptions in the absence of any affidavits or other evidence that would explain these documents and demonstrate their materiality to Bowman's defense. Simply put, the documents are unexplained, unclear, and do not indicate one way or the other whether they would have been helpful in preparing Bowman's defense.

{¶ 39} We are very concerned by the state's failure to provide the Undisclosed Document to Bowman before trial. And some of the individual documents in the Undisclosed Document may have deserved investigation or explanation. Nonetheless, it is Bowman's burden under Crim.R. 33(A)(6) to demonstrate that the newly discovered evidence was "material to the defense," and *Seiber* requires Bowman to demonstrate that the newly discovered evidence "discloses a strong probability that it will change the result if a new trial is granted * * *." *Seiber* at 17. On this record, he has failed to do so. The import of the Undisclosed Document is, at this point, far too uncertain to make any assumptions about any support it may or may not have provided with respect to Bowman's defense if the Undisclosed Document had been provided to Bowman before trial. Nor has

Bowman demonstrated that the Undisclosed Document "is material to the issues" or that it "does not merely impeach or contradict the former evidence." *Id.* For these reasons we conclude that Bowman has not established that the court abused its discretion in denying his motion for a new trial. *Vore*, 2013-Ohio-1490 at ¶ 39 ("An appellate court may not disturb a trial court's decision denying a motion for a new trial absent an abuse of discretion"). We overrule Bowman's first assignment of error.

**B. Sufficiency and Manifest Weight of the Evidence**

{¶ 40} Bowman's second assignment of error states:

THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT, WHICH WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 41} Bowman's third assignment of error states:

THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST APPELLANT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 42} Bowman presents the same argument in support of his second and third assignments of error, so we address them collectively. In both assignments of error, Bowman only challenges his conviction in Case Two. He argues that the state failed to prove the actual cost of repairs to the windows in Case Two because it only provided evidence or testimony regarding the estimated cost of repairs, and that the state improperly included labor costs in the reasonable cost of restoring the property.

{¶ 43} When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

- 13 -

proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 44} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 45} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 12th Dist. Clinton No. CA2020-06-007, 2021-Ohio-466, ¶ 15.

{¶ 46} "Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Billingsley*, 12th Dist. Butler Nos. CA2019-05-075 and CA2019-05-076, 2020-Ohio-2673, ¶ 15, quoting *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 47} In Case Two, the court convicted Bowman of fourth-degree-felony vandalism,

in violation of R.C. 2909.05(B)(2) and (E).  Another statute provides that when a person is charged with a violation of R.C. 2909.05 involving property valued at more than one thousand dollars, the jury or court shall determine the value of the property or amount of physical harm.  R.C. 2909.11(A).  However, "it is unnecessary to find or return the exact value or amount of physical harm * * *."  R.C. 2909.11(A).  Instead, the jury should find that the value or amount falls within the specific ranges that are tied to different felony degrees (here, $7,500 or more but less than $150,000).  R.C. 2909.11(A)(2)(b).  If "the property can be restored substantially to its former condition," then the measure of physical harm is "the reasonable cost of restoring the property."  R.C. 2909.11(B)(2).  If, on the other hand, the physical harm "is such that the property cannot be restored substantially to its former condition," the value of the property is the "cost of replacing the property with new property of like kind and quality * * *."  R.C. 2909.11(B)(3).[3]

{¶ 48} Through Exhibit 18 (the Pauly Jail Building Co. estimate for replacing the five large panes of glass at issue in Case Two) and Lt. Weidman's testimony, the state presented evidence of the reasonable cost of restoring or replacing the windows broken in Case Two.  Lt. Weidman testified that that cost, $10,670, which included freight, materials, and labor, was an accurate estimate for the cost to repair all five panes of glass.  Lt. Weidman described these as large panes of glass with certain special properties related to their use in a detention center.

{¶ 49} Bowman complains that the costs described in Exhibit 18 and testified to by Lt. Weidman included labor.  Bowman suggests that the reasonable cost of restoring or

---

3. This is the statutory definition for determining the value of *personal* property in a prosecution under R.C. 2909.05.  The same code section provides a different definition for determining physical harm to "real property or real property fixtures," which is the "difference in the fair market value of the property immediately before and immediately after the offense."  R.C. 2909.11(B)(3).  The court instructed the jury that it would determine the amount of physical harm in this case based on the items damaged being personal property.  None of the parties have raised this as an issue at the trial court or appellate level, and we merely note it here.

replacing property pursuant to R.C. 2909.11(B)(2) and (3) cannot include labor costs. Bowman cites no authority for this claim. Nor do we find any support for such an argument in the language of the statute, which does not exclude labor and only discusses the reasonable costs of restoration or replacement and the cost of replacing the property with new property of like kind and quality. R.C. 2909.11(B)(2) and (3). To exclude labor from these costs would be absurd because labor is, in many instances, a necessary component in the process of restoring or replacing damaged property. Bowman's argument concerning labor costs is unsupported and meritless. We conclude that the state presented sufficient evidence to establish the reasonable cost of restoring or replacing the property pursuant to R.C. 2909.11(B)(2) and (3), and the jury's finding with respect to the value of the physical harm was not against the manifest weight of the evidence. The state's reliance on a value that included labor does not affect these conclusions.

{¶ 50} Bowman also argues that there was insufficient evidence to convict him in Case Two and that the jury lost its way because the value listed in Exhibit 18 was "only an estimate." However, the Revised Code expressly provides that "it is unnecessary to find or return the exact value or amount of physical harm * * *." R.C. 2909.11(A). Moreover, to the extent that Lt. Weidman's credibility played a part in convincing jurors of the value of physical harm, that is a matter for which we defer to the factfinder. *State v. Spradlin*, 12th Dist. Clermont No. CA2016-05-026, 2017-Ohio-630, ¶ 68.

{¶ 51} We find that the state provided sufficient evidence to establish the reasonable restoration or replacement costs in Case Two. And the greater weight of the evidence supported Bowman's conviction in Case Two. We overrule Bowman's second and third assignments of error.

### III. Conclusion

{¶ 52} Bowman failed to submit evidence necessary to be granted a new trial under

Crim.R. 33. Bowman has also failed to demonstrate that the state submitted insufficient evidence to convict him or that his conviction was against the manifest weight of the evidence.

{¶ 53} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.